JULIE SOULARD, WIDOW, AND OTHERS, APPELLANTS *vs.* THE
UNITED STATES.

JOHN T. SMITH, APPELLANT *vs.* THE UNITED STATES.

In the treaty by which Louisiana was acquired, the United States stipulated that
the inhabitants of the ceded territory should be protected in the free enjoy-
ment of their property. The United States, as a just nation, regard this stipu-
lation as the avowal of a principle which would have been held equally sacred;
though it had not been inserted in the contract.

The term "property," as applied to lands, comprehends every species of title in-
choate or complete. It is supposed to embrace those rights which lie in
contract; those which are executory; as well as those which are executed. In
this respect, the relations of the inhabitants of Louisiana to their government
is not changed. The new government takes the place of that which has pass-
ed away.

THESE cases came before the court, on appeals from the
district court of the United States for the district of Mis-
souri.

In the district court of Missouri, the appellants, under the
act of congress of the 26th of May 1824, instituted proceed-
ings to try the validity of their claims to certain lands in
Missouri; the titles to which they claimed to derive under the
former Spanish government.

The district court gave a decree against the claimants.

The cases were argued by Mr Benton, for the appellants,
and by Mr Wirt, for the United States.

The facts of the cases and the arguments of the counsel
are not reported, as the court held the causes under advise-
ment.

Mr Chief Justice MARSHALL stated,

The court have held the two cases of Soulard and John
T. Smith against the United States under advisement. Af-
ter bestowing upon them the most deliberate attention, we
are unable to form a judgment which would be satisfactory
to ourselves, or which ought to satisfy the public.

In the treaty by which Louisiana was acquired, the United

States stipulated that the inhabitants of the ceded territory should be protected in the free enjoyment of their property. The United States, as a just nation, regard this stipulation as the avowal of a principle which would have been held equally sacred, though it had not been inserted in the contract.

The term " property," as applied to lands, comprehends every species of title inchoate or complete. It is supposed to embrace those rights which lie in contract; those which are executory ; as well as those which are executed. In this respect the relation of the inhabitants to their government is not changed. The new government takes the place of that which has passed away.

In the full confidence that this is the sentiment by which the government of the United States is animated, and which has been infused into its legislation, the court have sought sedulously for that information which would enable it to discern the actual rights of the parties; and to distinguish between claims founded on legitimate contracts with those authorised to make them on the part of the crown, or its immediate agents, and such as were entirely dependent on the mere pleasure of those who might be in power; such as might be rejected without giving just cause of imputation against the faith of those in office. The search has been unavailing.

When Louisiana was transferred to the United States, very few titles to lands, in the upper part of that province especially, were complete. The practice seems to have prevailed for the deputy governor, sometimes the commandants of posts, to place individuals in possession of small tracts, and to protect that possession without further proceeding. Any intrusion on this possession produced a complaint to the immediate supervising officer of the district or post, who inquired into it, and adjusted the dispute. The people seem to have remained contented with this condition: The colonial government, for some time previous to the cession, appears to have been without funds, and to have been in the habit of remunerating services with land instead of money. Many of these concessions remained incomplete.

[Soulard and others *vs.* The United States ]

If the duty of deciding on these various titles is transferred by the government to the judicial department, the laws and principles on which they depend ought to be supplied. The edicts of the preceding governments in relation to the ceded territory ; the powers given to the governors, whether expressed in their commissions, or in special instruction ; and the powers conferred on and exercised by the deputy governors, and other inferior officers, who may have been authorised to allow the inception of title ; are all material to a correct decision of the cases now before the court, and which may come before it. We cannot doubt the disposition of the government to furnish this information if it be attainable. We are far from being confident that it is attainable ; but have determined to hold the cases which have been argued under advisement until the next term, in the hope that, in the mean time, we may be relieved from the necessity of deciding conjecturally on interests of great importance.

The chief justice added : Since the determination which has been communicated had been agreed upon, the court has been informed that the edict of August the 24th 1770 is in the office of the secretary of state.

Had that edict been sufficient for the decision of the court, they would have disposed of the cases at this term. But other information is required, which has been referred to in the opinion. It is therefore considered proper to hold the cases under advisement.