May *v*, Specht *et al.*

MAY *v.* SPECHT ET AL,

The stipulations contained in the treaty of London, known as Jay's Treaty, for the protection of the rights of property, imposed no new obligation upon the govern-ment of the United States, but were only in affirmance of the law of nations.

On the 1st July, 1796, and prior thereto, C. was in possession of certain lands which he conveyed by warranty deed, in February, 1798, to M., who took pos-session of them under the deed from C., and, in October, 1800, by warranty deed, in which his wife did not join, conveyed them to P., who took possession under the deed to him. By an act of Congress, entitled an act regulating the grant of lands in the territory of Michigan, approved March 3d, 1807, it was pro-vided that the fee simple of any tract or parcel of land that was settled, occupied and improved prior to the 1st day of July, 1796, should be granted to the person or persons in the actual possession, occupancy and improvement thereof, and com-missioners were appointed for the purpose of ascertaining and deciding on the rights of persons claiming the benefit of the act. P. claimed the premises before the commissioners under the aforesaid deeds and his possession of the land under them, which claim was allowed, and a patent was subsequently issued to him for the land by the government. In an action brought by the widow of M. for her right of dower, *Held*, she was entitled to dower therein,

ERROR to Wayne Circuit Court. Margaret May brought ejectment, in the circuit court against the defendants, for her right of dower in cer-tain premises conveyed by her husband, James May, in October, 1800, in which conveyance she did not join, to James Peltier, under whom defendants claimed title. The parties agreed on a case or statement of facts, in the court below, which it is unnecessary to give here as the facts are fully stated in the opinion of the court. Plaintiff having failed to sustain her action in the circuit court, brought the cause to this court by writ of error.

*Davidson,* for plaintiff in error.

*Joy*, for defendants in error.

*By the court*, GREEN, J. The question in this case, is, whether James May, the husband of the demandant, was so seized of the premises demanded as to entitle his widow at the common law to dower therein, which is defined to be "the third part of all the lands whereof the husband has been seized during the coverture, of such an estate as the children by such wife might by possibility have inherited, and to which, by the death of her husband, the wife is entitled for her life." 3 Bac. Abr. 191.

The land was conveyed by warranty deed indented, bearing date the 1st February, 1798, from Catharine St. Aubin, widow and representative of the late Claude Campau, and Bernard Campau, her heir apparent, to the demandant's husband, to whom, on the second day of February, in the same year, peaceable and quiet possession and seizin of the same was delivered by the grantors in the presence of witnesses, according to the form of delivery then used. Bernard Campau, one of the grantors, was in possession of the premises prior to the 1st July 1796.

On the 10th October, 1800, James May, by warranty deed indented, conveyed the premises to James Peltier, who entered into possession of them, and continued in possession until he received the patent therefor from the government of the United States, pursuant to the act of Congress of 3d March, 1807.

James Peltier claimed the premises before the commissioners named in said act, under and by virtue of the deeds of conveyance aforesaid, and his own possession thereunder, which claim was established, and allowed by the commissioners on the 18th day of July, 1807.

The marriage of the plaintiff with James May in 1797, and his death in 1829, were admitted on the trial, and it was also admitted that the defendants were in the peaceable possession of the premises, or some portion thereof, deriving title thereto through and from Peltier.

It was supposed on the argument of this cause by the counsel for the plaintiff, that by the treaty of London, known as "Jay's Treaty," the possession of May's grantors was assured to them as a title to the land, and vested the property in them. By reference to the facts in this case it is apparent that that treaty can have no application, having been con-

cluded in 1794, and ratified in 1795, and it not appearing that they were at that time in possession of the land. Moreover, the stipulations contained in the treaty for the protection of the rights of property, imposed no new obligation upon the government of the United States, but were only an affirmance of the law of nations. 5 Wheaton 518; 4 Peters 512; 9 *id.* 711, 712; 7 *id.* 87.

It is then contended on the part of the plaintiff, that the confirmation of the title in James Peltier was a confirmation of the title in every one from or through whom he claimed title, and, by relation, made such title as good and effectual for all purposes, as if the confirmation had been made to May's grantors, who were in possession on the 1st of July, 1796; or that, if such was not the legal effect of the patent to Peltier, yet he and those claiming under him are estopped by his deed from May from denying the title in May which his deed purports to convey.

First, then, as to the effect of the confirmation of the title in Peltier; and this must depend upon the true construction of the act of congress before referred to.

The second section of that act provides, "That to every person or persons in the actual possession, occupancy and improvement of any tract or parcel of land, in his, her or their own right, at the time of the passing of this act, within that part of the territory of Michigan to which the Indian title has been extinguished, and which said tract or parcel of land was settled, occupied and improved by him, her or them, prior to and on the first day of July, one thousand seven hundred and ninety-six, or by some other person or persons under whom he, she or they hold or claim the right to the occupancy or possession thereof, and which said occupancy or possession has been continued to the time of passing this act, the said tract or parcel of land thus possessed, occupied and improved, shall be granted, and such occupant or occupants shall be confirmed in the title to the same as an estate of inheritance in fee simple." U. S. Land Laws, 545, 546. The third section of the same act provides for the issuing of certificates to the claimants, and for the issuing of patents in like manner as for other lands of the United States.

For the defendants it is claimed that all who occupied the lands prior to the patent to Peltier, were and are still to be treated as intruders upon the public domain, and that the title being in the government, May had no seizin upon which his widow can claim dower.

It must be conceded, from the facts appearing upon the record, that the paramount legal title was in the government up to the time of the issuing of the patent to Peltier; and that if the act of the 3d March, 1807, had not been passed, and this parcel of land had been granted by the government to a stranger who should have purchased under the general laws for the sale of government lands, such purchaser, for any thing that appears in this record, would have thus acquired a legal *adverse*, and paramount title.

In order properly to determine the effect of this grant, it becomes necessary to inquire what would have been the rights of the plaintiff, as against the defendants, had no legislation been had by congress in reference to the land, and no act done by the government asserting its title. In Bowne *v.* Potter, 17 Wendell, 167, Mr. Justice Nelson lays down the well established rule as follows: " Under our modern deeds of conveyance, the grantee in fee, taking possession, may defend successfully his *title* and *possession* against all the world, except the true owner. This position he acquires by means of his conveyance and possession, and until evicted by the paramount title, there seems to be no good reason for extending to him the favor of disputing the title under which he enters and holds. While undisturbed, he is enjoying the estate granted, and it is to be presumed that he has provided, by proper covenants, against any future failure of title and eviction."

The delivery of the deeds, both to and from May, as well as from Peltier, or his grantees, to the present defendants, having been accompanied by an actual delivery of the possession, and the full and entire enjoyment of all the estate granted, there can be no doubt in the case supposed that the plaintiff would have been entitled to her dower; nor could there be any doubt, in that case, that a prior mortgage executed by May, would have held the premises as against Peltier or his grantees, and that upon a foreclosure of the equity of redemption, the mortgagee would have a right to remove any occupant from the possession of the premises, unless such occupant be in by title paramount.

In the case of Bancroft *v.* White, 1 Caines' R. 185, which will be noticed hereafter for another purpose, the paramount title to the land in question, when entered upon by Hawes, the husband of the demandant, and when he conveyed the same was in the state, and it was insisted that his possession was an usurpation or intrusion upon the public do-

main of the state, and not a seizin; while it was conceded that in any other case but that of lands so circumstanced, his possession might be a seizin. Kent, J., in delivering the opinion of the court, says: "The court do not regard lands in the town of Canaan as an exception to the general rules which would apply in case the suit had been for lands in another town."

Assuming, then, that the plaintiff would be entitled to recover had no action been had by congress affecting that right, we are prepared to consider the effect of the patent to Peltier. And here it may be remarked, that if the act of congress under which the patent issued, declares, in clear and explicit terms, what its operation and effect shall be, there will be no occasion to consider the power and effect of patents issued under the general laws relating to the sale and disposition of the public lands. In the section of the act before recited, we find a recognition of the several legal *rights* in reference to these lands, under which other lands may be possessed. The person who is to receive the patent must be in possession *in his or her own right*, and not in the right of another, at the time of passing the act; and the land must have been so occupied by him or her, prior to and on the 1st day of July, 1796, or by some other person or persons, under whom he, she or they *hold or claim the right* to the occupancy or possession thereof. Under such circumstances the land is to be granted, *and such occupant or occupants shall be confirmed in the title to the same as an estate of inheritance in fee simple.* What title is the occupant *confirmed in* by this grant? The title under which he held at the time of the passing of the act; and not a new title created in him by the patent. Any other construction of this language, would involve the absurdity of vesting a man with an adverse title, based upon and in affirmance of the title under which he claims and holds the lands in question. But this is a mere voluntary release by the government—a recognition of the truth and justice of the claim of the occupant, and cannot, by any fair construction, be treated as an assertion of the paramount title of the government, in *opposition* to such claim.

It would seem to follow, as a necesssary result, that the confirmation of the title in Peltier, which extinguished the title of the government, must forever prevent those who derived their title through him from setting up the government title in opposition to the one under which Pel-

tier held at the time of the confirmation: in other words, that the confirmation by the patent to Peltier must be treated as taking effect, by relation, upon the title of May; and confirming it as an estate of inheritance in fee simple in him, entitling his widow to dower.

The case of Bancroft *v.* White, before referred to, was not as strong in favor of the demandant as this. Hawes, the former husband of Lois Bancroft, during the coverture, entered upon the demanded premises, and held and used the same in his own right for several years, and on the 1st of November, 1786, by deed of bargain and sale, conveyed the same to Jacob Brooker, in fee, with covenant of warranty. On the 8th of June, 1795, Brooker and wife conveyed the premises by a similar deed to Gardner, and on the 23d of September, 1799, Gardner and wife, by a similar deed, conveyed the same premises to White, the defendant. Each of the several grantees entered by virtue of his deed, and occupied in his own right.

By an act of the legislature of the state of New York, entitled "An act for the sale and disposition of lands belonging to the people of this state, and for other purposes therein mentioned," passed the 22d day of March, 1791, it was enacted *as follows, to wit: "That all the estate, right, interest, claim and demand of the people of the state of New York of, in and to any lands, tenements or hereditaments in the town of Canaan, in the county of Columbia, now possessed by any person or persons, shall be, and hereby is, granted to the respective possessors of such lands, tenements and hereditaments, and to the heirs and assigns of such possessors, respectively, forever:* provided always, that such possessors shall be construed and taken to be the person or persons holding in his or her own right, and not occupying and improving in the right of another." Here the lands &c. were *granted* to the *person or persons in possession,* and to the heirs and assigns of *such person or persons,* and no words of *confirmation* are used in the act, and no reference is made, unless implied from the language of the proviso, to any title or claim of title, which might have existed in any prior occupant or other person. Yet the court in that case say, "in the present case the tenant claims in fee under title derived from the husband," and judgment was rendered in favor of the demandant.

From the view we have thus taken of the case, it becomes unnecessary to consider the severe and rigid doctrine of estoppel, as it has often

been applied, to shut out facts, and override the principles of natural justice and good conscience between men.

It is said on behalf of the defendants, that this claim of dower is against equity, conscience and justice, and ought not to be allowed but upon the ground of strict law only; and that the very claim of dower now set up was warranted against and paid for.

We are by no means disposed to strain the provisions of law, or make them expand to embrace this claim; on the contrary, we place it entirely upon strict legal ground. As to its justice, it may be remarked, that the warranty against it is the protection of the party against injustice, and shows that it was in the contemplation of the parties when the covenant was made. The covenant of warranty of quiet possession runs with the land, and must be presumed to be an ample protection against the assertion of the right of dower, being that which the purchaser has provided for himself.

The judgment of the circuit court must be reversed, with costs to the plaintiff in error, and a new trial granted.

*Judgment reversed.*