Reynolds *v.* West.

## REYNOLDS *vs.* WEST.

The decision in *Woodworth* v. *Fulton,* that a grant of lands in San Francisco, made by an American Alcalde. during the continuance of the war between the United States and Mexico, is void, approved.

A grant by a Mexican officer duly authorized, and made in accordance with the Mexican laws applicable to California, and before the acquisition of the country by the Americans, is a title protected by the law of nations, as well as by the treaty of Querétaro, and cannot be disturbed.

An inchoate title to lands is property, which is protected by the treaty of Querétaro, and cannot be affected or questioned by any authority except the government of the United States. *Per* BENNETT, J.

A grant of land made by a Mexican Alcalde before the war, will be *presumed* to have been made in the course of his ordinary and accustomed duties, and within the scope of his legitimate authority; and the burden of proof lies on him who controverts the validity of such a grant, to show that it is not made by a competent officer, or in the forms prescribed by law.

It *seems,* that Mexican Justices of the Peace had authority, before the war, to make grants of land in San Francisco.

Where a petition for a grant of land was presented to an Alcalde without the signature of the petitioner, but the prayer of the petition was granted by a writing immediately following the petition; *Held,* that the grant was valid, notwithstanding the want of the petitioner's signature.

Where the grantee was a married woman; *Held,* that the question as to her capacity to take a *concession* of public lands, was a question for the Alcalde, in the performance of his official duties to determine, or that, at least, the legality of the *concession* would be presumed until her incapacity to take according to law should be established by the party denying it.

Reynolds *v.* West.

Where it appeared that the petitioner's husband was the owner of two fifty *vara* lots at the time the *concession* was made to her; *Held*, that it would be presumed that the act of the Alcalde in making the grant was in conformity with law, until it should be shown that the petitioner's husband had received the lots which he held, as a *concession* of public lands, and not by purchase from an individual.

Where the boundaries of a lot of land granted by an Alcalde were uncertain; *Held* that the true location of the lot was a question of fact for the jury to determine.

What is termed the "swinging of lots," a measure adopted in pursuance of a resolution of a public meeting in San Francisco, cannot change the location of premises actually granted, or impair the right of the grantee therein. The taking of a part of a lot from an individual for the purpose of a public street, though it may, perhaps, give him a claim on the public for compensation, does not confer upon him the right to encroach to the same extent on the land of his neighbor.

APPEAL from the court of First Instance of the district of San Francisco. Judgment was rendered in the court below in favor of the plaintiff, and the defendant appeals. The facts are stated in the opinion of the court.

*Calhoun Benham* and *Mr. Merrill*, for plaintiff.

*Edward Norton*, for defendant.

*By the Court*, BENNETT, J. On the 9th day of April, 1845, one Rosalia Haro presented a petition to Juan N. Padilla, the Alcalde of the Jurisdiction of San Francisco, in the following words, according to the translation in the record:—

"Fifth Seal,—One shilling. Provisionally used by the cus-
"tom house of the port of Monterey, in the department of
"California, for the years one thousand eight hundred and
"forty-four and five.
"Micheltoreno.                    "PABLO DE LA GUERRA,
                                   "in the absence of
                    "DON GUILLERMO ED. HARTNELL.
"Señor Alcalde of San Francisco:—Rosalia Haro, a Mexi-
"can citizen, and located in Yerba Buena, requiring a lot
"to place thereon an orchard, comes now before you in
"due form and showeth: That in order to carry out her

" object she asks possession of lot number one hundred
" and seventy-four, which is now vacant, on the plan of
" Yerba Buena; which I beg you will deign to grant, and
" for which you shall receive thanks—I swearing that it is not
" through fraud, but for necessity.

  " Yerba Buena,
    " April 9th, 1845."

The above petition was not signed. Immediately following
it was a grant by Juan N. Padilla in these words :—

  " Having seen the foregoing representation, and by virtue of
" the superior decree of the Departmental Government, I, Juan
" N. Padilla, First Alcalde of this Jurisdiction, do give unto
" Rosalia Haro, legal and perpetual possession of lot number
" one hundred and seventy-four on the plan of Yerba Buena,
" said lot being fifty *varas* square, and under the following
" conditions :

  " 1st. That within the precise term of one year from this
" date the lot shall be fenced in and a house built thereon.

  " 2d. The regulations of police established and to be estab-
" lished shall be regarded.

  " 3d. Failing to observe the first condition, the interested
" party shall lose her right to the lot—and failing to observe
" the second, shall be punished according to law.

  " In order to serve as a title, I give this in Yerba Buena, this
" 9th day of April, 1845, record having been made of the same
" in the proper register.

(Signed) " JUAN N. PADILLA.

" Witnesses—William Hinckley, Francis Haro.

" Municipal fees $15 $\frac{63}{100}$."

At the time the above grant was made, Rosalia Haro was a
married woman, and she and her husband, A. A. Andrews,
were living on another lot. Andrews and his wife had two
other lots at the time this grant was made, but whether they
were lots granted to them by the public authorities, or lots

Reynolds *v*. West.

which they had acquired by purchase from private individuals, does not appear. Rosalia Haro had a small house built on the lot granted to her, and a fence made around it, and she cultivated it as a garden; and Andrews caused a well to be dug about the middle of it. Andrews testifies that his houses and fences were burnt down during the war.

Juan N. Padilla, the Alcalde who made the grant, was examined as a witness on the part of the plaintiff, and testified that the grant was made at the time it purports to have been made—that it was genuine and made in good faith, and according to the forms of law and the customs of the country, and that he put Rosalia Haro in possession of the lot.

Francisco Guerrero, another witness for the plaintiff, testified that the Alcalde ought not to have made the grant without the petition having been signed, but that, in other respects, it was in accordance with the law and the customs of the country.

In 1847 Andrews moved from San Francisco to a ranch at the Red-woods, about eight leagues off.

The plaintiff claims through several conveyances from Andrews, and his wife Rosalia Haro.

The defendant claims, under a grant from an American Alcalde, made on the 17th day of March, 1847, title to a lot designated as lot number 174.

We decided in *Woodworth* v. *Fulton et al.*, (*ante, p.* 295,) that a grant from an American Alcalde, made during the continuance of the war between the United States and Mexico, was a nullity. We entertain no doubt about the correctness of that decision, and we shall adhere to it. The claim of title by the defendant in this case may, therefore, be dismissed from further consideration.

The question is entirely upon the title of the plaintiff. Was the grant made in accordance with the Mexican laws applicable to California? If so, we think it is a title which cannot be disturbed. By articles eight and nine of the Treaty of Querétaro full guaranties are given for the protection and free enjoyment of private property by Mexican citizens; and the right to this would have been sacred, independent of the treaty. (*Delassus*

v. *The United States,* 9 *Pet.* 117; *United States* v. *Perchman,* 7 *Pet.* 51.) The sovereign who acquires an inhabited country, acquires full dominion over it; but this dominion is never supposed to divest the vested rights of individuals to property, and an inchoate title to lands is property. (*Id. ibid; Smith* v. *United States,* 10 *Pet.* 326; *Soulard* v. *United States,* 4 *Pet.* 511.)

The grant by the Alcalde in this case was, according to the testimony of Guerrero and Padilla, made in accordance with the law and the customs of the country; and custom and usage, when once settled, are equivalent to law, though they may be comparatively of recent date. (*Strother* v. *Lucas,* 12 *Pet.* 410.) The presumption is in favor of the validity of every grant issued in the forms prescribed by law; and it is incumbent on him who controverts, to support his objections. The burden of proof lies on him. (*Patterson* v. *Jenks et al.,* 2 *Pet.* 216.) It is settled by the decisions of the supreme court of the United States, that a grant, or *concession,* made by an officer under a foreign government, in the course of his ordinary or accustomed duties, creates a legal presumption that he acts within the sphere of his duties, until proof is made by those who deny, that such power does not exist. (*Strother* v. *Lucas,* 12 *Pet.* 410, 437; *United States* v. *Arredondo et al.,* 6 *Pet.* 691.) In the case of Arredondo, it was decided that fraud cannot be presumed, but must be proved, and that the signature of an officer in his official character will always be received, upon the principle that public functionaries are supposed to act with legitimate, and not usurped functions.

It strikes us that, according to the decisions above cited, the sole question touching the validity of the plaintiff's title, is the power of the Alcalde to convey. It would seem, from an instruction of the Prefect to the justice of the peace of San Francisco, under date of April 23, 1841, and recorded in Book B. of Spanish records of San Francisco, that the power of conveying lots in that *jurisdiction* was vested in the justice of the peace. The following is a close translation of that instruction :—

Reynolds *v.* West.

" PREFECTURE OF THE }
FIRST DISTRICT.      }

" The secretary of the despatch of government of this depart-
" ment, under date of the 16th instant, communicates to me
" what I now copy.

" When the Señor Prefect Don José Castro made a visit to
" the North, he took instructions with him from the government
" on various subjects, and amongst them it was ordained, that
" lots could be granted to private individuals in the establish-
" ment of *Dolores*, but that they should not exceed the quantity
" of fifty *varas*. That was the order, and now it is renewed ;
" his excellency having seen the note that this Prefecture direct-
" ed to this *Bureau* the 6th of the present month ; and his ex-
" cellency orders me to inform the justice of the peace of San
" Francisco, that in the granting of lots, it should be done in due
" order, and under the best regulations possible, as the locality
" of the place may require, so that the streets and public squares
" be not interfered with, and from the start have a just relation
" and correctness.

" I communicate this to you for your intelligence and fulfil-
" ment, and as the result of his communication treating on the
" subject.

          " God and Liberty.
" Señor                 (Signed,)  " SAN JUAN DE CASTRO.
       Justice of the Peace } (Signed,)  " JOSÉ T. CASTRO.
   of San Francisco.        }             " April 23, 1841."

From the above document the power to make grants or *con-
cessions* of land, not exceeding fifty *varas*, seems to be expressly
recognized in the justice of the peace of San Francisco, but
there is nothing contained therein limiting the exercise of such
power to the justice of the peace, or prohibiting Alcaldes from
making grants with the same force and effect as a justice of the
peace ; and, according to the above cited decisions of the su-
preme court of the United States, such authority is to be pre-
sumed until the party denying it proves that it did not exist.

We must, therefore, hold that the grant in this case was made by a competent officer.

We think the objection that the petition was not signed by Rosalia Haro, is untenable. According to the recital in the grant, the petition must be considered as having been presented by her to the Alcalde, and the grant having been made to her in pursuance of the prayer of the petition, we think that the want of her signature does not affect the validity of the subsequent grant.

The position of the appellant, that the decree of the Departmental Government by virtue of which the Alcalde assumed to make the grant, ought to have been produced and proved, we also consider untenable, under the decisions above cited.

But it is objected that the petitioner was a married woman, and was, therefore, incapable of taking a *concession* of public land. But that question was one for the officer, in the performance of his official duties, to determine, or if not, it was for the party denying the capacity to take, to establish. The same answer applies to the objection, that the petitioner's husband was the owner of two other lots at the time this grant was made. To make the objection valid, we apprehend that it should be shown that these two other lots were held under a grant from an officer of the government, and not by purchase from an individual.

The conditions annexed to the grant appear to have been complied with, and no question can arise as to the validity of the plaintiff's title upon this ground.

Our conclusion is, that the grant was valid, and transferred to the grantee a right and interest in lot 174 on the then plan of Yerba Buena, which is protected by the treaty of Querétaro, and which would have been equally protected under the law of nations, without any treaty stipulations.

The only remaining question is as to the location of this lot 174. The grant conveyed to Rosalia Haro a right to that definite portion of land known as lot No. 174 on the plan of Yerba Buena, and to no other lot or portion of land. The testimony is somewhat conflicting on this point, but the weight of it is, in our

opinion, against the position that the land claimed by the defendant is any portion of lot 174, granted to Rosalia Haro. This is a question which we think is peculiarly proper for the determination of a jury, and a new trial should be awarded, for the purpose of ascertaining, with greater certainty, the position of the lot claimed. What is called the "swinging of lots," in pursuance of a resolution adopted at a public meeting in San Francisco, could in no respect change or vary the location of any lot, or impair the right of Rosalia Haro in the premises granted to her. If any portion of a lot owned by an individual has been taken for a public street, that may give such person a claim upon the public for compensation, but can give him no right to encroach, to the same extent, upon the land of his neighbor. Vested rights cannot be thus shifted from one person to another.

New trial ordered, costs to abide the event.