JOB ANDREW *v.* THOMAS W. NEWCOMB and WILLIAM WELLS, Sheriff, &c.

The owner of land may lawfully contract for its cultivation, and may provide, by such contract, in whom the ownership of the product shall vest.

In such contract the parties may provide that upon the performance of a condition, or the happening of an event, the ownership shall be changed.

Such an arrangement is not a conditional sale, as the subject matter was not in existence at the time of the contract.

Under such contract, the property vests in the proper party as soon as it comes into existence.

Crops to be raised are an exception to the general rule "that title to property not in existence cannot be affected so as to vest the title when it comes into existence."

In case of crops to be sown, it vests *potentially* from the time of the bargain, *actually*, as soon as the subject arises.

APPEAL from a judgment of the Supreme Court. The action was in the nature of replevin for a quantity of un-dressed flax and the seed upon it, which had been levied on by the defendant Wells, as sheriff of Rensselaer county, on execution against Leonard and Reed, in favor of the defend ant Newcomb. The plaintiff claimed title under a bill of sale of the flax executed to him by William Ray. The facts proved on the trial were the following : In April, 1856, Ray, being the owner of two small parcels of land, comprising together about fourteen acres, upon which Reed was desirous of raising a crop of flax, it was agreed between them that Reed might so cultivate the land at a rent of thirteen dollars per acre, payable the ensuing spring, the crop of flax to remain the property of Ray until Reed should give him security for the payment of the rent. A crop was accord-ingly grown, and when it was ready to be taken in, and Reed was about moving it, he was forbidden by Ray, on the ground that the rent had not been secured. It was necessary to prevent injury that the flax should be put under cover, and it was thereupon agreed between them that Reed should take it into his own flax barn, pile it separately from his other flax, and that it should remain the property of Ray until the rent

should be paid. It was so removed and deposited accordingly. This was about the 10th August, 1856. On the 26th of the same month, the defendant Newcomb procured the executions to be issued on two judgments which he had recovered against Reed in the year 1843; and they were that day levied upon the flax remaining in Reed's barn. On the 9th September following, Ray, by a bill of sale reciting a valuable consideration, sold the flax to the plaintiff, who, on the next day, demanded it of the deputy who had the execution, and who had made the levy, who refused to give it up, saying, in effect, that he was indemnified. It was sold on the execution after the commencement of the action. Ray and the plaintiff knew of the levy before the execution of the bill of sale. Immediately after the demand and refusal, this suit was commenced. Reed was and for several years had been insolvent.

In the course of the trial the defendants offered to prove, by the cross-examination of Reed, that about the time this flax was put into the barn, there were other large quantities of flax which he had raised that season upon the lands hired by him of other persons, and that he procured various individuals to pretend to claim some interest in various parcels of it for the purpose of holding it for his own benefit and keeping it from his creditors. The evidence was excluded on the plaintiff's objection, and the defendant excepted. The defendant also proposed to prove that Reed, before the execution of the bill of sale, had requested Ray to sue the defendants for the flax. This was in like manner excluded, and the defendants again excepted.

At the close of the trial the defendant moved for an instruction to the jury, to the effect that Ray's title was that of a pledgee of the flax for the security of the rent, and that his lien in that character was lost by his allowing Reed to put the flax in his barn; that Ray had not any such property in the flax as that he could convey it to the plaintiff; that the plaintiff, by claiming to be the general owner of the flax, had waived any lien which he had upon it, and that no sufficient conversion had been proved.

The judge overruled these several positions, holding that the arrangement under which the flax was raised was a conditional sale of it to Ray, and that his title was transferred to the plaintiff by the bill of sale; and he directed a verdict for the plaintiff for the amount of the rent and interest. A verdict was rendered accordingly, the defendants excepting to the ruling. This appeal is brought from the judgment for the plaintiff rendered at the General Term—the exceptions having been ordered to be there heard in the first instance.

*R. A. Parmenter,* for the appellant.

*J. H. Reynolds,* for the respondent.

· DENIO, Ch. J. I am of opinion that, upon the facts proved, and about which there was no controversy, the plaintiff was entitled to the verdict which he obtained. The owner of land may lawfully contract for its cultivation, and may provide in whom the ownership of the product shall vest. The bargain in this instance was that it should vest in Ray, the owner of the land. It was competent for the parties also. to provide that upon the happening of any other event, or the performance of a condition, the ownership should be changed; and this was done in the present case by the provision which was made, in effect, that upon the payment or security of the agreed rent Ray's ownership should cease and that the flax should then become the property of Reed. It was inaccurate to call the original arrangement a conditional sale of the flax. There could, strictly speaking, be no executed contract of sale, because the subject was not in existence, and because also Reed, the supposed vendor, was never its owner. It was grown under the contract of letting, and by the provisions of that contract it became the property of Ray as soon as it became the subject of property in any one. No doubt fraud might be predicated of such an arrangement. For instance, the whole transaction might be feigned, and the formal terms be collusively devised only as a cover to protect the proceeds of the labor of the debtor from the pursuit of his creditors. There was no evidence upon which to base such an allegation

in this case. Reed was insolvent, and was hence obliged, if he cultivated land, to bestow his labor on the land of some one else. Ray had land, which he appears to have been unwilling to let to Reed, except under a bargain that the fruits of the cultivation should vest in him. Such a bargain was made, and there is no evidence to show that it was in any respect fraudulent or collusive. When the crop matured, the legal property vested in Ray. Reed was entitled to a certain interest in it, namely, the right to acquire it by the performance of the condition, that is, by the paying or securing the rent. That interest was liable to be reached by the creditors of Reed by a proceeding in equity. But it could not be taken under a process of *fieri facias*, which only authorizes the levying the debt of the goods and chattels of the debtor. It follows that the idea of a pledge or of a sale, absolute or conditional, has no application to the case. The law requiring a change of possession between vendor and vendee is inapplicable for the same reason. The flax was at all times the property of Ray. His title was original and did not arise out of a purchase from Reed. What took place when the property was carried into Reed's barn is unimportant, except as confirming the evidence of the original transaction, and showing that Ray had not abandoned his rights. The title to personal property draws after it the possession, and, in judgment of law, this flax was as fully in the possession of Ray, while it was in Reed's barn, as it was when growing on Ray's land.

These conclusions seem to me so obvious upon legal principles which are universally acknowledged and uniformly acted upon, that a reference of cases is scarcely necessary. As long ago as the time of Chief Justice HOBART, who was the immediate successor of Sir EDWARD COKE, in the Common Pleas, it was held that one proposing to plant crops, might convey them in advance, and that the fruits which should arise afterwards would pass as soon as they were extant. (*Grantham* v. *Hawley*, Hobart, 132.) In *Foote* v. *Colvin* (3 Johns., 216), two plaintiffs brought trespass against the defendants for cutting and carrying away a crop of rye,

which one of the plaintiffs had raised upon the land of the other under an arrangement that the one who owned the land should have one-third, and the other plaintiff, who raised it, should have the remainder of the crop. It was held that the crop vested in them in these proportions, and that they could sustain a joint action. The same principle had been affirmed in *Hare* v. *Celey* (Cro. Eliz., 143). These cases are sufficient to show that crops to be raised are an exception to the general rule that title to property not in existence cannot be affected so as to vest the title when it comes into being. In the case of crops to be sown it vests potentially from the time of the executory bargain, and actually as soon as the subject arises.

I perceive no reason to doubt the validity of the transfer from Ray to the plaintiff. The flax had been levied on by the defendants at the time of the execution of the bill of sale, but that did not divest the title. It was still the property of Ray, and subject to his disposition.

But it is said there was no sufficient evidence of a conversion. The formal levy was a conversion at the election of the owner of the property. Ray was then the owner, but he did not elect to sue for the tort, but sold the property as he would have done if it had not been levied on. Had the plaintiff, the purchaser, then brought trespass *de bonis asportatis*, as the judgment for the plaintiff would have changed the title of the property by relation as of the time of the trespass, which would have overreached the plaintiff's title, there would have been an incongruity in the recovery. But the action was replevin, or, as it is now called, an action for the recovery of the possession of personal property. Personal property may be taken and detained from the owner, and such owner may yet dispose of it to another, for his title is not divested. The purchaser may take it from the wrongful possessor; or, if he will not give it up, he has the same remedy which the original owner had to recover the possession. It may be that he ought first to require the delivery of it to himself; but if that was necessary, it was done in this case. But if this view is not satisfactory, and the action

requires the same evidence which would be necessary to support trespass or trover, I still think the proof was sufficient. The sheriff had the constructive possession under his levy. The plaintiff might waive the wrongful act of taking and proceed upon the conversion implied by the refusal to deliver it to him, the owner, on demand. I think the formal difficulty suggested does not exist.

The exceptions are not well taken. The offer to show that Reed had practiced frauds upon his creditors by transactions with other people, did not tend to prove that the transaction in question was not *bona fide.* Such evidence might possibly have been competent in connection with other evidence of fraud bearing upon the particular transaction under consideration. But no such other evidence was given or offered. The other exception was to the exclusion of evidence that Reed had requested Newcomb to bring this suit. If it had been admitted that Ray had sold the property to Reed because he wished to avoid the trouble of a lawsuit respecting it, the fact would not have been material in any aspect of the case.

I am for affirming the judgment of the Supreme Court.

Judgment affirmed.