## McCombs v. Becker.

*Landlord and tenant — lease of farm — landlord may retain title to crops — Contract — construction of — Evidence — performance of official duty presumed.*

It is competent for the landlord and tenant of a farm to agree that hay raised on the farm shall remain the property of the landlord until the rent shall be paid. *Johnson* v. *Crofoot,* 37 How. 59, distinguished.

A tenant of a farm agreed to take good care of the landlord's cows; if the hay on the farm was not sufficient to winter them, the landlord should supply the deficiency at the rate of $3 per ton, and if there was a surplus the landlord should have it and pay the tenant $3 per ton. *Held,* that the hay on the farm was the tenant's, and subject to sale on execution against him.

The presumption is, that a sheriff who sells property on execution has previously made a levy.

APPEAL by defendant from a judgment in favor of plaintiff entered upon the report of a referee.

The action was brought by James T. McCombs against William C. Becker to recover for the alleged conversion of a quantity of hay. Plaintiff claimed title by virtue of a purchase at a sale under an execution against one Lloyd G. Burnham. The hay was raised on lands belonging to defendant. These lands defendant had leased to said Burnham by a lease reading as follows:

"Articles of agreement made this 14th day of February, 1872, between W. C. Becker, of Wilna, and L. G. Burnham, of Fowler, St. Lawrence county. The said W. C. Becker agrees to rent and let his farm in Wilna and Philadelphia, the land on which the said Becker now resides, on the following conditions: Agrees to furnish forty cows and hay sufficient to keep them out to May 15.

1872 ; also hay for a span of horses in the spring of 1872 ; also to furnish him a team to use in spring's work in the spring of 1872 ; also to furnish all the dairy utensils he, the said Becker, has now on hand, and also one-half of seed grain and seed potatoes ; said Burnham is to do all the work on said farm, thrash out ·all the grain raised on said farm during the year 1872 ; to move and lay up said rails and fences as said Becker thinks best in the spring of 1872 ; also to plow and seed such ground as Becker thinks best, and to do all the haying to be done on said farm during the summer of 1872 ; to do it in proper season and in good workmanlike manner. Said Burnham is to give to said Becker the sum of eight hundred dollars for rent of said forty cows, also to pay one-half of all taxes on said farm assessed during the year 1872, to 1st of March, 1873 ; also all road work assessed from the 1st of March, 1872, to the 1st of March, 1873. Said Becker is to have all the butter and cheese manufactured on said farm, also to hold all of the grain raised on said farm, or enough sufficient to pay all rent; said Burnham is to work all the milk of said forty cows on the farm, in butter and cheese ; to take possession of said farm on the 1st day of March, 1872, and have it one year or to the 1st day of March, 1873 ; is to take good care of said cows, and to deliver up said cows and farm to said Becker on the 1st day of March, 1873; said cows are to be in good condition and in good flesh. Said Becker is to furnish on the 1st day of March, twenty-eight of said cows, and on or before the 1st day of April, 1872, twelve more good cows. Burnham is to pay to Becker three dollars per ton for all hay that is required to winter of 1872 and 1873, and to feed through the spring of 1873 to the 15th day of May ; the said forty cows and one team of horses after 1st of March, 1873, till the 1st of June, 1873, and also one more team through the month of May, 1873, provided there is a deficiency of hay on said farm, and Becker is to pay in case more than hay enough to keep the afore-mentioned horses and cows through the winter of 1872 and 1873, and spring of 1873, the amount of $3.00 per ton for all surplus ; Burnham is to draw out all the manure that is on said farm on the 1st day of June, 1872, on such places as Becker wishes," etc., etc.

Burnham took possession of the lands and personal property under the lease. While in possession he cut the hay growing on the lands and stacked it or put it into a barn on the premises. During his occupancy a levy was made upon the same by virtue of an execution

issued upon a judgment against Burnham, and at a sale thereunder the plaintiff purchased.

The referee found that there was not sufficient hay cut and put up on the lands in 1872 to winter out the cows and horses for the spring of 1873.

Other facts sufficiently appear in the opinion.

*McCartin & Williams,* for appellant.

*V. P. Abbott,* for respondent.

LANDON, J. The plaintiff is the purchaser of a quantity of hay, sold by the sheriff upon an execution against the property of the tenant of the defendant. The defendant, who, after the sale, converted the hay to his use, claims that by virtue of the agreement and lease between him and his tenant, he, and not his tenant, was the owner of the hay. If his claim can be sustained, then the judgment against him should be reversed.

It was entirely competent for the defendant and his tenant to agree that the hay to be raised upon the demised premises should be and remain the property of the defendant, until the rent should be paid, and the conditions of the lease satisfied by the tenant. Instead of the tenant mortgaging the crop to be grown as security for the rent, he may agree that the crop shall be the landlord's until the rent be paid. In the one case the agreement is that the crop shall be the landlord's if the tenant does not pay the rent ; in the other, that it shall not be the tenant's property until he does pay it. *Andrew* v. *Newcomb,* 32 N. Y. 417 ; *Van Hoozer* v. *Cory,* 34 Barb. 9. The case of *Johnson* v. *Crofoot,* 37 How. 59, does not hold otherwise, but does hold that the terms of the contract in that case gave the landlord only a chattel mortgage interest, which was defeated for want of due filing.

The difficulty with this defendant's case is, that he did not, by his agreement with his tenant, provide that the title to the hay should remain in him. He made such an agreement as to the butter, cheese, and grain, and this agreement as to them discloses more strikingly the lack of it as to the hay. The tenant simply agreed "to take good care of the cows," and in case the hay raised upon the demised farm should fail to be sufficient to winter them, his landlord should supply the deficiency at the rate of $3 per ton, and

if there should be a surplus, the landlord should have it and pay the tenant $3 per ton for it. So long as the tenant "took good care of the cows" the landlord could not complain of the disposition he made of the hay. If he sold it and starved the cows, the landlord's remedy would not be against the purchaser of the hay, but against the tenant for condition broken, in not taking good care of the cows. True, the landlord was to have the surplus hay and pay $3 per ton for it, but this was an executory contract for its purchase, the breach of which would be compensated in damages. It follows that the hay was the tenant's, and subject to sale upon execution against him.

We see no force in the objection that the levy was not sufficiently proved. The indorsement by the deputy sheriff upon the execution shows that he levied upon hay within the life-time of the execution. The presumption is that a sheriff who sells property on execution has previously made a levy. *Hartwell* v. *Root*, 19 Johns. 345; *Smith* v. *Hill*, 22 Barb. 656.

The judgment should be affirmed, with costs.

*Judgment affirmed.*