WATKINS *v.* WYATT.

PROPERTY NOT IN ESSE. *Is the subject of a valid mortgage.* A crop yet to be planted is the subject of a valid mortgage. Such an assignment is held by the court to be lawful.

FROM DYER.

Appeal from the Circuit Court.    GIDEON B. BLACK, Judge.

RICHARDSON & WATKINS for plaintiff.

LATTA & MARSHALL for defendant.

SNEED, J., delivered the opinion of the court.

The agreed case shows that the plaintiff agreed to furnish one Houston McCain with supplies, on condition that McCain, who was a farmer, should execute to the plaintiff a mortgage of his cotton crop for the then current year (1875) as a security for the supplies so furnished. A deed of trust to that effect was accordingly executed in February, 1875, "upon a crop of cotton to be planted and grown upon the land of the said McCain in the year 1875, to secure said Wyatt for supplies furnished and to be furnished to said McCain, to enable him to make said crop." This deed of trust was duly registered. When the crop matured, and became subject to levy, the defendant Watkins having recovered a judgment against McCain

for the sum of $42.95 before the execution of the deed, caused an execution to be levied on enough of the cotton to discharge his debt; and this action was brought to determine who has the better right. The question presented is, whether a crop of cotton yet to be planted is the subject of a valid mortgage; and the adjudged cases seem to be very much in conflict on the subject. A humane policy would seem to favor the affirmative of the proposition; as, if such is the law, the indigent farmer may obtain credit upon his prospects, and be enabled to subsist his family pending the cultivation of his crop. The case of *Grantham* v. *Hawley*, reported by Sir Henry Hobart in the reign of James I., is one of the earliest upon the subject, and has been frequently cited in support of the doctrine that a thing not *in esse* may be the subject of a valid chattel mortgage. The case, as cited, was as follows: A man seized of land let the same by indenture for twenty-one years, and covenanted that it should be lawful for the lessee, his executors and assigns, to carry away to his own use *such corn as should be growing* upon the ground at the end of the term; and afterwards the lessor released his reversion; and one question was, whether the lessee was entitled to corn so growing; and it was argued, on the part of the assignee of the reversion, that it was merely contingent whether there should be corn growing upon the ground at the end of the term or not, and that the lessor never had property in the corn; and, therefore, could not give or grant it; for the right to the corn standing at the end of the term being certain,

accrued with the land to the lessor. But judgment
was given against the reversion, because it was said
that the property, and very right of the corn when
it came into being, was passed away, for this was both
a covenant and a grant; and, therefore, if it had been
of natural fruits, as of grass or hay, which run merely
with the land, the like grant would have carried them
in property after the term. Then, though corn were
*fructus industrialis*, so that he that sowed it might
seem to have a kind of property *ipso facto* in it, di-
vided from the land, and, therefore, it would go to
the executor, and not to the heir; yet, in this case,
all the color the reversioner had to it was by the
land which he claimed from the lessor who gave the
corn; and though the lessor had not the corn actually
in him, nor certain, yet he had it potentially, for the
land was the mother and root of the fruits. There-
fore he that had that, might grant all fruits that might
arise upon it afterwards, and the property would pass
as soon as the fruits were extant." Hob., 132; 1 Pow.
Con., 157, 158, 2 Walp. Ed.

When stripped of all quaintness of verbiage, the
plain doctrine of this old case is, that he who owns
the soil may sell or assign the crops to be grown
upon it. It is said in Benj. on Sales, that in rela-
tion to things not yet in existence, or not yet belong-
ing to the vendor, the law considers them as divided
into two classes, one of which may be sold, while the
other can only be the subject of an agreement to sell—
of an executory contract. Things not yet existing
which may be sold, are those which are the natural

product, or expected increase, of something already belonging to the vendor. A man may sell the crop of hay to be grown on his field, the wool to be clipped from his sheep at a future time, the milk his cow will yield in the coming month, and the sale is valid. But he can only make a valid agreement—not an actual sale—where the subject of the contract is to be something to be afterwards acquired; as the wool of any sheep or the milk of any cows that he may buy within the year, or any goods to which he may obtain title within the next six months. Benj. on Sales, sec. 78. The precise point now in judgment, however, has been adjudged against the proposition, that a thing not *in esse* is the subject of a valid sale or mortgage. Thus, it was held in *Hutchinson* v. *Ford,* 9 Bush., 318, where this exact question was involved, that "a mortgage of a crop to be raised on a farm during a certain term, but which is not yet sown, passes no title, and the mortgagee has no claim against a purchaser of a crop for it, or its value." *Everman* v. *Robb,* 3 Cent. L. J., 735; *Ofin* v. *Sill,* 8 Wend., 111; *Lunn* v. *Thornton,* 1 Man., Gran. & Scott, 379; *Barnard* v. *Eaton,* 2 Cush., 295; *Bank of Lansingburg* v. *Cary,* 1 Barb., 542; *Comstock* v. *Scales,* 7 Wisc., 159; *Redd & Co.* v. *Burrus & Williams,* MSS. Geo., 1877.

Many other authorities might be cited to the same effect, and quite as many that look in the other direction. *Andrew* v. *Newcomb,* 32 N. Y., 417; 3 Law Reg., 19–33; 17 Con., 114; *Holroyd* v. *Marshall,* 10 House of Lords Cases,1 89; 18 Pick., 168; 14 Pick., 497; 10 Met., 481; 12 Cush., 376; *Brett* v. *Carter,*

Cent. L. J., May 5, 1876; 32 New Hamp., 484; 18 Verm., 465; 1 McCaslin's Ch. Rep., 408; 24 Wisc., 551; 26 Ill., 121; 48 Ala., 109; *Butt* v. *Ellett*, 19 Wall., 544; 42 N. Y., 620.

In one of these cases, it is said: "In the case of crops to be sown, it vests potentially from the time of the executory bargain, and actually as soon as the subject arises." *Andrews* v. *Newcomb*, 32 N. Y. Rep., 417. Mr. Story says that rights in remainder and reversion, possibilities coupled with an interest, rents, franchises and choses in action, are capable of being mortgaged. E. g., per sec. 1021. A court of equity, he says, will support assignments, not only of choses in action, and of contingent interests and expectations, but also of things which have no present, actual, or potential existence, but rest in mere possibility; not, indeed, as a present positive transfer operative *in presenti*, (for that can only be of a thing *in esse*), but as a present contract, to take effect and attach as soon as the thing comes *in esse*. E. g., per sec. 1040. Among the examples he cites, is that of the assignment of the head-matter and whale-oil to be caught in a whaling voyage now in progress. The right will attach to the head-matter and whale-oil when attained. *Id.* So strongly are courts of equity inclined to uphold assignments when *bona fide* made, that even the assignments of freight, to be earned in the future, is good in equity, and will be enforced against the party from whom it becomes due. *Id.*, sec. 1055. In Story on Sales, it is said, "While a person cannot make a present sale of all the wool there may be on a sheep,

which he may hereafter buy, nor any other thing in which his interest is wholly prospective and doubtful, there may be a valid sale of the wine a vineyard is expected to produce, or the grain a field is expected to grow, the milk of a cow for the next year, or the future young of animals." Story on Sales, sec. 183; *McCarty* v. *Blivens*, 5 Reg., 196. Whatever is the subject of a valid sale is, of course, the subject of a valid mortgage. A man may sell or mortgage everything that is his property; and such a sale, if *bona fide*, will be upheld in law and equity. Property is the right and interest a man has in lands and chattels to the exclusion of others. 17 Johns, 283; 11 East, 290; 4 Pet., 511. All property, real or personal, corporeal or incorporeal, movable or immovable, may be the subject of mortgage. 1 Hill on Mort., 6. Things are said to have a potential existence when they are the natural product, or expected increase, of something already belonging to the vendor. *Low* v. *Pew*, 11 Am. Rep., 357. The term incorporeal properly includes all legal rights. The right in the proprietor of the soil to plant, cultivate and gather his crops, to the exclusion of all others, is an absolute legal right, and an incorporeal property; and incorporeal property is as well the subject of valid sale and mortgage as any other kind of property. The mortgagor, in this case, was the proprietor of the land on which he proposed to raise the crop in controversy. The crop had a potential existence because it was to be the natural product and expected increase of the land then owned and occupied by him. Why may he not

obtain the credit necessary to make the crop by exe-
cuting a mortgage upon it? We see no sound reason
why. Who is to be injured by it if the transaction
is *bona fide*, and there is no superior lien for rent or
otherwise? Who is to be misled by it if the trans-
action is at once published to the world by registra-
tion, as was done here? If the merchant is willing
to furnish him with supplies, and enable him to make
the crop, and take the risk of the crop itself for se-
curity, who has a right to complain, and where is the
*mala fides* of the transaction? Is there any doubt
that a court of equity would sustain the mortgage,
in such a transaction? Then, wherefore must he fail
in a court of law, into which forum the parties have
brought the case, and where our liberal statute requires
that, in such a case, their rights shall be adjusted
upon equitable principles? In the case of *Andrews* v.
*Newcomb*, above cited, it is said that, as long ago as
the time of Ch. J. Hobart, it was held that one pro-
posing to plant crops might convey them in advance,
and that the fruits which should arise afterwards, would
pass as soon as they were extant; citing Hob., 132;
3 Johns, 216, and *Hare* v. *Celay*, Cro. Eliz., 143. Crops
to be raised, say the court, are an exception to the
general rule; that title to property not in existence
cannot be affected so as to vest the title when it
comes into being. In the case of crops to be sown,
it vests potentially from the time of the executory
bargain, and actually as soon as the subject arises.
32 N. Y. Rep., 421. The judgment, in this case,
certainly created no lien upon the crop, which the

statute protected from levy until after maturity. The judgment debtor had failed with his title, and the judgment creditor could stand on no higher ground than his debtor. We hold the assignment to be lawful and valid, and that the plaintiff below has the better right to the fund in controversy.

Affirm the judgment.