## TRACY *vs.* SUYDAM and others.

A commission to take testimony is a writ or process issued by the special order of the court, and a seal is essential to its validity. If it be issued without a seal it confers no authority upon the commissioners, and depositions taken under it are extra-judicial and cannot be received in evidence.

After the death of one of several partners, no action will lie against his personal representatives, for the recovery of a partnership debt, while the surviving partner is alive ; until the inability of the latter to pay the debt has been legally ascertained, or clearly shown.

Where a claim is presented to executors, against the estate of their testator, the justice of which is disputed, and the parties agree to *refer* the same, under the statute, the agreement to refer need not notice matters of defense to the claim.

Tracy *v.* Suydam.

On the approval by the surrogate of the agreement to refer, and filing the same in the office of a clerk of the supreme court, the agreement becomes operative as a voluntary appearance by the parties, in this court, and a submission to its jurisdiction, for the purpose of adjudicating upon the claim presented.

The account presented is, in effect, the plaintiff's complaint, and there being no pleadings, and no provision in the statute for pleadings, the defendant is limited to no particular defense; and consequently any and every legal defense against the claim must necessarily be available. *Per* SMITH, J.

On the trial before the referees, the plaintiff must prove his claim, and satisfy the referees of its justice and validity; and every species of legal proof adapted to show the injustice of the claim, or its invalidity as a whole, or in degree or amount, is admissible.

Within this rule, a set-off may be proved; or a payment in whole or in part; or proof given to reduce the amount.

And the executors are at liberty to make any defense that their testator could himself make, if alive, and the same were properly pleaded, in an action upon such claim.

They may, therefore, insist upon the statute of limitations; and if that defense is sustained, it is a complete answer to the whole cause of action.

APPEAL from a judgment entered upon the report of referees. This was a reference under sections 39 and 40 of article 2, title 3, chapter 6, of part 2 of the revised statutes, of a disputed claim, against the estate of Carlton Legg, deceased, to three referees. The appellants are the executors of Legg; and the respondent, claiming to be a creditor of said estate, presented an account to the appellants, as such executors, claiming a balance due him of $1058.85, verified by his affidavit, on the 15th day of March, 1855. The executors doubting the justness of the said claim, entered into an agreement with the respondent to refer the same pursuant to the statute. That agreement was as follows:

"Whereas Morgan D. Tracy has lately presented a claim against the estate of Carlton Legg, deceased, to Nicholas D. Suydam and Moses A. Legg, the executors thereof, for moneys due him for his share of wood and timber sold and secured from a farm jointly owned by said Carlton Legg and Morgan D. Tracy, and moneys paid, and for his services in superintending the said farm and getting off said timber and wood,

and selling the same, and for expenses incurred and paid on the joint account, and for other demands against the said estate as former partner or joint owner with said Legg, of a certain farm, and other demands against the said estate, and for interest on the same. And whereas the said executors doubt the justice of the said claim, alleging that the said claims are not just and valid against said estate; it is therefore agreed, in conformity with the statute in such case made and provided, by and between the said Nicholas D. Suydam and Moses A. Legg, executors of, &c. of said Carlton Legg, deceased, and Morgan D. Tracy, that the said matter in controversy and all claims and demands which he has against said estate, be referred, pursuant to statute, to Samuel S. Ellsworth, Daniel W. Streeter and Theodore F. Sharpe, all of Penn Yan, Yates county, three disinterested persons, as referees to hear and determine the same with all convenient speed. Sept 1, 1855."

The agreement was signed by the parties, and the surrogate of Yates county indorsed upon it his approval of the persons named therein as referees; and it was filed in the office of the clerk of that county. An order was thereupon made by this court, referring the matter to Samuel S. Ellsworth, Daniel W. Streeter and Theodore F. Sharpe. Theodore F. Sharpe having removed from the county and refused to act, Benjamin L. Hoyt was substituted as referee in his place. The matter was brought to a hearing before the said referees, at Penn Yan, on the 9th day of August, 1858, when the following facts appeared. In the month of May, 1839, Carlton Legg and Stephen Rice owned a farm of about 145 acres, in Pultney, Steuben county, which had been conveyed to them by one Voorhies. On the 4th of May, 1839, Rice conveyed his share of the farm to Morgan D. Tracy, the respondent, and Seymour Tracy. By an arrangement between Legg and the two Tracys, Morgan D. Tracy, the respondent, was to go on and take the supervision of the land; attend to getting out wood, timber, &c., and the farm was to allow him $300 a year for his services; i. e. Legg was to pay one half, Seymour Tracy

Tracy *v.* Suydam.

one quarter, and Morgan D. Tracy one quarter. On the 14th day of March, 1842, C. Legg, S. Tracy and M. D. Tracy conveyed the farm in question to Thomas Caly, who entered into possession of the same and remained so in possession until the spring of 1844. Caly executed to Legg and the Tracys a mortgage on the said farm for a part of the purchase money, bearing date the same day with the deed to him. That mortgage was subsequently foreclosed in chancery, and the premises were sold by a master in chancery, and bought in by C. Legg and M. D. Tracy, and conveyed to them May 1, 1844. Seymour Tracy sold his interest in the land to M. D. Tracy at the time of the foreclosure, in May, 1844. After the sale of the farm under the foreclosure and the purchase by Legg and M. D. Tracy, they owned the farm equally for about three years, when they sold most of it. From the time of the sale to Caly, Seymour Tracy had no farther interest in the land. The balance of the farm was sold by Legg and M. D. Tracy in March, 1849.

On the hearing before the referees, the counsel for the defendants claimed and insisted, 1st. That the plaintiff could not recover any thing for matters growing out of the ownership, occupancy, working or sale of the farm in question, by the plaintiff, C. Legg, the testator, and Seymour Tracy, previous to the sale to Caly in 1842, because they were tenants in common of the farm, and one could not recover of the other, until there had been a full accounting, which cannot be had in this proceeding for want of proper parties. That Seymour Tracy should be a party, as he was equally interested with the plaintiff. 2d. That so much of the plaintiff's claim as grew out of and arose during the joint ownership of the farm by Legg and the Tracys, constituted an independent account between the parties to this suit and Seymour Tracy. That no part of such account accrued to the plaintiff within ten years before the institution of these proceedings, and that the plaintiff could not recover, and that the same was barred by the statute of limitations. 3d. That the plain-

tiff could not recover any thing growing out of the own-
ership of the farm by him and Legg, after the purchase under
the mortgage in 1844, until there had been a full accounting
between them, as they were joint owners of the farm and in
partnership as to the proceeds. And furthermore, that the
account was barred by the statute of limitations, as to the
whole of the account, except the last charge of wood from
1847 to 1851. 4th. That the plaintiff was not entitled to re-
cover any thing for superintending the farm after he and Legg
bought it under the mortgage, because the agreement to pay
the $300 a year was between Legg and the two Tracys, and
when they sold the farm it terminated, and the repurchase by
Legg and the plaintiff did not revive it, and there was no new
agreement between them, nor any proof as to the value of the
services ; and had there been any proof of the value of the services,
the plaintiff could not recover without an express promise to
pay. Which several positions and points were controverted
by the plaintiff's counsel, who amongst other things claimed
and insisted that the defendants not having set up the statute
of limitations as a defense, at the time the agreement of refer-
ence was made and issue joined, could not now avail themselves
of such defense on the trial ; and that the defendants were not
entitled to any set-off against the plaintiff's claim, because,
1st. They set up no such claim in the agreement of reference
or in joining issue ; and 2d. They had not proved any on the
trial.

The referees subsequently made their report in favor of the
plaintiff, and the defendants filed and served exceptions to
said report, and appealed from the judgment entered thereon.

*S. H. Welles,* for the appellant.

*C. H. Judd,* for the respondent.

*By the Court,* E. DARWIN SMITH, J. The referees, it
seems to me, erred in several particulars on the trial and de-
cision of this cause. In the first place, the commission, and

the depositions annexed, were improperly received in evidence. The paper purporting to be a commission, being without seal, conferred no authority upon the commissioners, and the depositions annexed were extra-judicial. (5 *Iredell,* 96. 4 *Dev.* 95. 3 *id.* 279.) A commission is a *writ* or *process* issued by the special order of the court, and a seal is essential to its validity. (19 *John.* 212. 6 *Ham. Ohio Rep.* 11.) The judiciary act of 1847 only dispensed with the seal in respect to process which issues *of course* without any application to the court.

But upon the merits, other errors, more important, occur. In the first place, it appears that on the 4th day of May, 1839, the plaintiff and Seymour Tracy became the owners, with the defendant's testator, of an undivided half of the lot of land referred to in the case, under an agreement, as the referees find, that the plaintiff should receive $300 a year for taking the charge and oversight thereof. This agreement was made, necessarily, with his tenants in common, and as a personal claim was a claim against both of them, and survived against Seymour Tracy on the death of the testator, Legg; and no action at law, or suit in equity, would lie against the defendants singly therefor, Seymour Tracy being still living, until his inability to pay the same had been legally ascertained or clearly shown. (2 *Denio,* 585. *Voorhis* v. *Childs' Ex'r,* 17 *New York Rep.* 357.) But the agreement, as found by the referees, made between Legg and the two Tracys, in May, 1839, for the payment of $300 to the plaintiff for his care and oversight of the farm, clearly terminated with the sale of the farm on the 14th March, 1842. On the repurchase of the farm by Legg and the plaintiff in May, 1844, the agreement for the salary did not, *ipso facto,* revive. And there is no proof of any new agreement between Legg and the plaintiff for its revival or continuance. The referees, therefore, clearly erred in allowing the plaintiff a salary of $300 for six years, against the defendant, as for his services in respect to the farm, upon the basis of the original agreement for such

Tracy *v.* Suydam.

compensation. The referees also erred in overruling the proof that the plaintiff had received payment for the pasturing in 1846 of the 100 sheep on the farm then owned by him and Legg, and for the wheat sold therefrom. Upon the assumption that the plaintiff was entitled to recover of the defendant for his services in taking care of the farm, and to have an accounting with them in respect to his disbursements for and receipts therefrom, he was clearly bound to account for the money received for the pasturing of the sheep and for the wheat sold. The money, so far, paid him for his services in taking care of the farm, and was a proper offset to his claim, or was admissible in proof to reduce the same by way of payment. It was objected to this evidence, that the claim therefor was not contained in the agreement to refer. This is true. But I do not understand that matters of defense are ever, or need be, in these cases, set up in the agreement to refer. The whole proceeding is *sui generis.* The agreement to refer relates to a particular claim presented to the executors or administrators, the justice of which is disputed. (2 *R. S. p.* 88, § 36. *Dayton's Surrogate,* 354.) The agreement to refer recites this fact, and on the approval thereof by the surrogate and filing of the same in the office of a clerk of this court, becomes operative as a voluntary appearance by the parties thereto in this court and a submission to its jurisdiction, for the purpose of adjudicating upon the claim presented. The account presented is in effect the plaintiff's complaint; and there being no pleadings and no provision in the statute for pleadings, the defendant is limited to no particular defense, and consequently any and every legal defense against the claim must necessarily be available. (7 *Wend.* 522. 13 *id.* 453.)

On the trial before the referees, the plaintiff must prove his claim and satisfy the referees of its justice and validity, and every species of legal proof adapted to show the injustice of the claim, or its invalidity as a whole, or in degree or amount, must be admissible. Within this rule a set off may

Tracy *v.* Suydam.

be proved, or a payment in whole or in part, or proof given to reduce the amount. And the defendants standing upon their denial in the agreement to refer, of the justice of the claim, must be at liberty to make any defense that their testator or intestate could himself make if alive, and the same were properly pleaded in an action upon such claim. Within this rule the defendants were entitled to insist on the statute of limitations. The statute of limitations is a very proper and meritorious defense in cases like this, where claims of a doubtful character are suffered to lie along till witnesses and parties are dead, and executors or other persons entirely ignorant in regard to them are called upon to make payment.

It was the obvious right and duty of the executors to interpose this objection to the plaintiff's recovery, and I cannot see why it was overruled by the referee, or why it was not a complete defense to the whole cause of action.

The judgment should be reversed, and a new trial granted, with costs to abide the event.

Judgment reversed and new trial granted.

[Monroe General Term, September 5, 1859. *T. R. Strong, Johnson, Welles* and *Smith,* Justices.]