Bucklin v. Chapin.

JAMES H. BUCKLIN, Respondent, v. HELEN M. CHAPIN, Administratrix, &c., of EDMUND G. CHAPIN, Appellant.

(GENERAL TERM, FIFTH DISTRICT, APRIL, 1868.)

An executor or administrator who, after a claim against the estate of the testator or intestate, has been presented to him, delays unreasonably to make objection to it, is not precluded from asserting the statute of limitations as a bar to such claim.

And he may surcharge and falsify, any part of an account, that has become stated in the lifetime of the testator, or intestate, or since his own appointment.

A debtor who allows an account against him to become stated, by omission to dispute the same when presented, does not thereby waive the defence of the statute of limitations.   Per MULLIN, J.

An administratrix caused a notice to be published, under an order obtained from the surrogate for the purpose, requiring creditors to present their claims against her intestate's estate, to her attorney.  Plaintiff presented his account accordingly, and left it with the attorney, and no objection was made thereto until more than three years after such presentation, when it was rejected by the administratrix; afterward, and when ten years from the time the last item of the account accrued, had elapsed, an order was entered by the surrogate on consent of parties, under the statute, referring the claim to referees for adjudication, and on the hearing before such referees, the administratrix insisted upon the statute of limitations as a bar to a recovery; the referees found for the plaintiff,—
Held, on appeal, their decision should be reversed.

A reference under the statute (2 R. S., 88, § 36), stands in place of an action, and the entry of an order to refer must be deemed its commencement, for the purpose of determining whether it has been brought within the time limited by the statute.

Service performed for, or property sold to, an executor or administrator, as

such, cannot be deemed or treated as the continuation of a running account with the testator or intestate, in his lifetime.

EDMUND G. CHAPIN was a watchmaker by trade, and carried on business as such at Little Falls, in the county of Herkimer. He occupied for many years, a portion of a store owned by the plaintiff, but upon what terms did not appear.

The plaintiff, was a merchant, and sold groceries and provisions. For several years the plaintiff, and his clerks, boarded with the intestate, and the latter obtained from the store provisions, and other things required for family use.

Chapin in or about 1857, entered into copartnership with one House, in the rectifying and sale of liquors; and they remained in business together until the death of Chapin, the intestate, on November 2d, 1861.

His wife, Helen M. Chapin, was appointed administratrix of the goods and chattels of her late husband by the surrogate of Herkimer county in December, 1861.

The plaintiff kept books of account, on which were charged the goods, &c., received by Chapin, and on the same books were entered certain credits to Chapin, but there were not found by the administratrix any books kept by Chapin, in which there was any account against the plaintiff.

It appeared by the plaintiff's books, that at some time prior to, or on the 12th April, 1856, there was a balance brought forward in favor of the plaintiff against Chapin of $2,333.31. It is admitted that Chapin received the property charged to him on plaintiff's books, from 12th April, 1856 to the 31st May, of the same year (both days inclusive), amounting to $26.29.

On the 6th July, 1856, plaintiff charged to Chapin forty dollars, for moneys paid Aldin Bucklin, on his (Chapin's) account.

There was charged to Chapin, on the plaintiff's book, after date of 6th July, 1856, $180 for rent of the part of the plaintiff's store occupied by C., from 1st of June, 1850, to 1st June, 1856, at thirty dollars per year.

On the 5th November, 1861, being three days after Cha-

pin's decease, there was charged one dollar for shaving Chapin after his death; and the sum of $377, as of the 6th November, for property sold and received.

On the plaintiff's books there was credited as of the 1st August, 1846, a balance due to Chapin from the firm of Staring & Bucklin, in which firm plaintiff was a copartner, the sum of $18.98. There was also credited to him in each year thereafter, up to 13th June, 1856, one or more items in each year, amounting in all to the sum of seventy-seven dollars.

There was also credited to Chapin $1,800 for board of plaintiff, 474 weeks, ending on the 11th March, 1856; seventy-seven weeks for board of Schuyler, 345 weeks for board of Snell, and four weeks for board of Dickens, making 900 weeks in all, at the price of two dollars per week.

| | | |
|---|---|---|
| The whole amount of plaintiff's account was.... | $2,592 | 59 |
| The whole amount of his credit to Chapin was.. | 1,877 | 00 |
| Leaving due to plaintiff................... | $715 | 59 |

Among the other charges in plaintiff's account, was an item of eight dollars for making an inventory and settling accounts.

The facts relating to this item as claimed by the plaintiff are, that a short time before Chapin's death, and while he was lying sick in his house, the plaintiff was called in and consulted as to his (Chapin's) affairs. House had proposed to buy out Chapin's interest in the firm of Chapin & House, and for which plaintiff wanted $300. This, House thought too much, and thereupon plaintiff made an inventory of the effects of the firm, and left the same with Chapin, and he also settled some accounts which Chapin had against others. This service was not rendered, as plaintiff swears, at the request of House for himself or his firm; nor does he swear that he was ever requested to do it, by either Chapin or the defendant; and the only color for the charge is, that before Chapin's death he had a consultation with defendant on the subject of his (plaintiff's) looking after Chapin's affairs. There was no finding on this fact by the referees. The item of one dollar for shaving after death was rejected.

The defendant caused to be published, after she was appointed administratrix, a notice requiring creditors to present their claims against the estate of her late husband, at the office of H. Link, Esq., in the village of Little Falls. On the 17th December, 1862, the plaintiff presented an account, the substance of which is given above, and left the same at the office of Link. The defendant made no objection to the account until 3d April, 1866, when she rejected the same.

Subsequently, the parties agreed upon three persons as referees pursuant to the statute relating to the determination of claims against the estates of deceased persons, and the persons so selected were approved by the surrogate of Herkimer county, and were, on the 11th May, 1866, duly appointed referees, to hear and determine the validity of said claim.

The referees, after hearing the proofs and allegations of the parties, found, among other things, that there was a mutual and running account between the parties, and extending from 1845 to 1861 on the part of the plaintiff, and from 1846 to 1856 on the part of the estate.

And that by reason of the presentation of the account by the plaintiff to the defendant in 1862, and the omission to dispute or reject the same until April, 1866, the account became a stated account, and was conclusive on defendant.

The defence principally relied on, was the statute of limitations, and it would seem to have been the opinion of the referees, that because the account became stated, the statute of limitations was no longer a defence to plaintiff's claim, and that the charges for property sold subsequent to Chapin's death were allowable on the same principle.

There was judgment for the plaintiff for the balance of his account, after deducting the credits allowed by him to the estate. From this judgment the defendant appeals.

*F. Kernan*, for the appellant.

*G. A. Hardin*, for the respondent.

Present—FOSTER, MULLIN and MORGAN. JJ.

Bucklin v. Chapin.

By the Court—MULLIN, J. I will not take time to consider the question, whether on the proof in this case, there was a mutual, open and running account between the plaintiff and defendant's intestate, but shall assume, for the purposes of this appeal, that it was such an account.

To present the question in a way to enable the court to decide it satisfactorily, there should be a finding of sundry facts not found by the referees nor discussed by the counsel. It is, therefore, safer to leave that question to be considered on a future trial, should a new trial be ordered by the court.

The defence mainly relied upon by the defendant is the statute of limitations. The view that the referees took of the presentation of the account by the plaintiff, and of the failure of the defendant to dispute or reject the same, precluded all inquiry by them as to whether or not the statute barred all, or any portion of the plaintiff's claim.

The view of the referees was, that the account became a stated account, and the defendant could not avail himself of the statute of limitations, as a defence to it.

If the referees are wrong in their view of the legal question, the judgment must be reversed, and a new trial ordered.

In references under the Revised Statute, to hear and determine claims against the estates of deceased persons, an executor or administrator is entitled to any defence which was available to his testator or intestate in his lifetime, including the statute of limitations. There is nothing in the form or nature of the proceedings which precludes such a defence. (*Tracy* v. *Suydam*, 30 Barb., 110.)

The omission of a debtor to dispute the accuracy of an account presented to him within a reasonable time, has no other effect than to enable the creditor to recover the amount of the account without proof of the correctness of any of its items. It is not as was said by SELDEN, J., in *Lockwood* v. *Thorne* (18 N. Y., 285), an estoppel. The account is still open to impeachment for mistakes and errors. * *. The party seeking to impeach it is bound to show, affirmatively the mistake or error alleged. (1 Wait's Practice, 719.)

Giving to the account stated all the force that can be properly claimed for it, it does not preclude the debtor from insisting upon the statute of limitations as a defence. He cannot dispute the items; but if they had ceased to be legal claims against him, his mere silence cannot infuse life and validity into them. To give it such an effect, would be to give it the force of an estoppel *in pais* which it cannot properly have.

If mere silence is to operate as a waiver of the defence, how is a party to whom an account is rendered correct in its terms, but barred by the statute of limitations, to protect himself?

He cannot deny the correctness of the accounts, and I am not aware of any case that holds him bound to notify the creditor of his intention to insist on the statute. If the debt is not paid the creditors must sue, and then the debtor must avail himself of the statute.

But if it should be held that when an account becomes stated, the debtor cannot insist upon the statute of limitations as a defence, the principle ought not to be extended to an account presented to and not disputed or rejected by an executor or administrator.

This class of persons may pay a debt that is outlawed, but the payment will not be allowed to him in the settlement of his accounts with the surrogate.

Nor can a personal representative revive by an express verbal promise a debt barred by the statute. (*Bloodgood* v. *Bruen*, 8 N. Y., 362.)

If this cannot be done directly it surely cannot be done indirectly.

The law implies a promise by the debtor to pay an account when it becomes stated. Will the law give to an implied promise a greater force than it permits to be given to an express promise? Certainly not.

Since the Code, a debt that is barred cannot be revived except by a promise in writing or by payments. It would be an evasion of the statute to permit a stated account to revive

a claim that is barred.  The whole object of the statute of limitations would be defeated by the adoption of such a rule.

Section 91 of the Code provides that actions upon contract, obligation or liability, express or implied, must be brought within six years after the cause of action shall have accrued. (Same, § 74.)

The cause of action accrued as to all that part of the indebtedness contracted prior to the death of Chapin, on the 7th July, 1856.  The death of Chapin extended the time of commencing the action eighteen months, giving the plaintiff seven years and six months within which to bring his suit.

The reference stands in the place of an action, and the entry of the order to refer must be deemed to be the commencement of the action for the purpose of determining whether an action had been brought within the time limited in the statute.

It was held in *Peck* v. *Randall* (1 J. R., 165), that the presentation of a claim to the trustees of an absent debtor prevented the running of the statute of limitations because it stood in place of a suit and the trustees could not be sued. The personal representative can be sued, and the reason of the rule ceasing, the rule itself ceases.

The precise point was decided in *Reynolds* v. *Collins* (3 Hill, 37); BRONSON, J., holding that presentation of a claim to executors did not prevent the running of the statute.

The order to refer was entered on the 11th May, 1866. Nearly ten years had elapsed from the date of the last item before suit was brought.  Unless, therefore, there is something in the case to take it out of the usual rule, the whole account which accrued before the death is barred.

It is insisted that the charge for eight days services in making inventory and settling accounts, being within six years from the date of the last preceding item, prevents any part of the account from being barred by the statute.

The account having become stated this item is *prima facie* correct, and hence *prima facie* the whole account is valid.

But it was competent for the defendant to surcharge and falsify, and thus exclude any article not legally chargeable.

In references under the statute to determine the validity of claims against the estates of deceased persons there are no pleadings, hence the parties only show by their proofs what the grounds of recovery or of defence may be.

The personal representative has an unlimited right to establish by evidence any defence he may have to the claim. He may, therefore, surcharge and falsify any part of an account that has become stated in the lifetime of the testator or intestate, or since his appointment as administrator or executor.

The defendant is at liberty, therefore, to assail the items of the 26th October.

It seems to me, the items under consideration cannot be recovered. There is no evidence that plaintiff was requested by either the defendant or the intestate to perform the service for which the charge is made. The plaintiff himself does not swear to any request.

The service was for the benefit of the firm of House & Chapin, and, presumptively, it should pay for it.

Rejecting this item, then every charge in the account, accruing in the intestate's lifetime, is barred, unless that result is prevented by the charges for wood, flour, &c., delivered after his death.

The service performed for, or property sold to an executor or administrator, as such, cannot be deemed or treated as a continuation of a running account with the testator or intestate, in his lifetime.

At the death, the account is closed ; all future charges are against a different party, who is himself personally liable to the creditor on all contracts made by him in behalf of the estate.

For these reasons, I think the whole of the account that had accrued against Chapin in his lifetime is barred.

There must, therefore, be a new trial.

Judgment reversed and new trial ordered ; costs to abide event.