Per Curiam.
The order of Judge Bockes denying the motion to vacate the order of reference was not appealed from and therefore stands as the law of the case.
So standing, it follows that the order appealed from must be affirmed, with ten dollars costs, and printing disbursements.
The following is the opinion at special term:

(Special Term, Saratoga County, Filed December, 1885.)

This is a motion by the above-named executors to vacate' and set aside an- order granted May 1, 1878, referring the claim of the above-named plaintiff against the estate of Sylvester Van Demark, deceased, and rejected by said executors, to a referee to hear and determine. The motion was noticed for hearing at the July special term, 1881, but was not until recently argued and submitted for decision.
The leading facts of the case are as follows: The plaintiff made up and presented his claim against the estate of the deceased, represented by the defendants, the executors named in his will, which was rejected; thereupon the plaintiff and one of the executors, who had the management of the estate in charge, entered into an agreement to refer the claim to a referee, as authorized by the statute on the rejection of a claim against a defendants estate; which agreement dated April 22, 1878, was signed by the plaintiff, claimant, and by the managing executor of the estate as follows: L. Van Demark, ex., for executors for (of) S. Van Demark, deceased.
Without obtaining an approval of the reference by the surrogate as provided by the statute, an order referring the - *3 matter in controversy was granted May 1, 1878, and entered in the clerk’s office May third following, based on the agreement to refer.
Hearings were thereupon had from time to time before the referee during the years 1878, 1879 and 1880, and the taking of proofs before him was closed when it was discovered that there had been no approval of the reference by the surrogate, and the executors then repudiated the reference and refused to recognize the validity of the proceeding, insisting that it was without authority of law and void.
A motion was then (after a time) made by the claimant to the surrogate on notice to the executors, for his approval of the agreement to refer; and that officer, on the 13th May, 1884, granted the application and signed an approval, which approval, after reciting the proceedings already had, was as follows: “I, W. B. Bliss, Surrogate of the County of Oneida, aforesaid, do hereby approve of the referee named in the said agreement and order of reference. Dated at Rorme, N. Y., the 13th day of May, 1884. W. B. Bliss, Surrogate, in and for Oneida county, N. Y.”
The motion before the surrogate was heard on affidavits and papers showing proceedings already had in the matter. The executors appeared before the surrogate on the motion and objected to the making of the approval sought to be obtained; filed papers signed by them respectively, revoking all consent by them to the reference of the claim, and two of them repudiated action of the other executor in their behalf, and denied his authority to bind them by his action theretofore had; and said third executor corroborated the other two to some extent in their statement as to his want of authority to act for and bind them in the premises; and such executor, on the motion before the surrogate, erased his signature from the original agreement to refer by drawing a pencil mark across his name, with a view to its repudiation and cancelation.
It should be stated in this connection that the claimant then insisted that the agreement to refer could not be then revoked or its force in any respect impaired; and also insisted that on the facts disclosed there had been a full and complete recognition of the proceedings by all the defendants; and it was also made to appear on the application to the surrogate, as it is also made to appear on this motion, that the acting and managing executor who signed the agreement to refer for himself and his co-executors, was an attorney and counselor of this court, and attended the hearings before the referee and conducted the defense in behalf of the defendants; and that in 1880 he made formal appearance in the case as attorney for himself, as *4 executor, and that the other two (executor and executrix), also made formal appearance by attorneys in the case, and that the defendants made a motion at special term, which motion was denied and that a second notice of motion was given by the defendant’s attorneys, but was not made, the fact having been discovered that the reference had not received the surrogate’s approval. Thereupon, the applition to the surrogate for his approval of the reference heretofore mentioned was made and the present motion followed.
Bockes, J.—(1). It is urged that the entire proceeding was and is without authority of law, and void because of its omission to procure the surrogate’s approval of the ref erence as prescribed by statute, before entering the order of reference; it being insisted that such approval was a. prerequisite to jurisdiction.
_ This position is based on the ground that a proceeding like the present, to determine a demand of a claimant against a decedent’s estate, founded on rejection of the-claim and an agreement to refer, is a special proceeding as, distinguished from an action prosecuted in the usual way in which common law actions are commenced and conducted to trial and judgment. It has been so repeatedly held. Roe v. Boyle, 81 N. Y., 305, and cases cited on page 307; also, Mowry v. Peet, 88 N. Y., 453. Then it is urged that the form of proceeding to obtain jurisdiction being prescribed by statute, its provisions must be strictly" observed in order to the attainment of that end. Such is the general rule in all matters and proceedings specially authorized by statute. After the statutory steps necessary to jurisdiction shall have been taken, the doctrine of the law applicable to cases upon error, technical omissions and waiver, will obtain. The question then arises what were the steps necessary to confer jurisdiction in the present case! This question seems to be answered by the decisions (Tracy v. Suydam, 30 Barb., 110; Burnett v. Gould, 27 Hun, 366; Comstock v. Olmsted, 6 How., 77; Bucklin v. Chapin, 53 Barb., 489), to the effect that there must be according to the requirement of the statute, (1) An agreement in writing to refer the rejected claim; (2) an approval thereof by the surrogate; and (3) a filing thereof with the clerk, with an entry of the order of reference; all this to confer upon the court jusisdiction of the parties and subject-matter. Compliance with these requirements is for some purposes deemed to be the commencement of an action. Sanford v. Sanford, 2 Hun, 96; Bucklin v. Chapin, 1 Lans., 443-449. In some of these cases there has been a general remark that the filing of the agree *5 ment to refer and the entry of the order of reference operates as a commencement of an action _ with a view to the question of jurisdiction, but in these cases an agreement to refer approved by the surrogate as required by the statute, seems to have been in contemplation. Pausing here and leaving out of the case the action of the parties, based on the agreement and order and also the subsequent approval of the agreement by the surrogate, and it would seem to follow as a necessary conclusion that the proceedings stood without the authority of law. There would be an omission from the record of an important statutory requirement. But it is said this omission has been supplied; that there was an agreement in writing to refer, and the order of reference, with the consent of the parties to the proceedings thereunder; and finally the approval of the reference by the surrogate as required by law, and now the record is all right. The question then here is, could the omission above adverted to be supplied as was here attempted, and thus overcome or obviate the objection of an alleged want of jurisdiction. The decision in Bucklin v. Chapin (53 Barb , 489) holds that this may be done. The omission to obtain the approval of the surrogate before entering the order of reference was manifestly through inadvertence. While the trial was in progress before the referee, and until its close, and even after that time, the parties acted upon the assumption and evident belief that the statutory requirements had been fully complied with; and it may be here added that the case was treated asan action in the court; all parties having formerly appeared therein by their attorneys and the action of the court on motion at special term had been invoked.
Now, in Bucklin v. Chapin (supra), the learned judge in giving the opinion of the court remarked as follows: “Assuming that it (the order) was never entered by the clerk it can be done nunc pro tune, and should be so entered to prevent a failure of jurisdiction,” and further, “if it must be assumed that the papers are not in conformity to the statute, I am nevertheless satisfied that the referee acquired jurisdiction to hear, try and determine the matter in controversy between the parties. * * * The supreme court has jurisdiction over the claims which were submitted to the referee; in other words, it has jurisdiction of the subject-matter. By voluntary consent and appearance of the parties jurisdiction of their persons was obtained; and when jurisdiction over both is acquired the proceedings thereafter are valid however irregular they may be.” So it was there laid down that the appearance before the referee, the trial of the claim presented, and report thereon, are all that are necessry to justify the entry *6 of judgment, and “that all the preliminary steps may be supplied nunc pro tune.” According to this decision the omission of the surrogate’s approval of the reference in this case might be, as it here was, supplied.
This is a general term decision made and concurred in by Justices Mullir, Foster and Morgan, which, whatever may be my individual opinion of its soundness, must be respected and followed at special term. Confronted with this decision here directly in point, I do not feel at liberty further to consider the subject of jurisdiction raised in this case on the omission of the surrogate to approve the agreement to refer ultimately supplied.
It may be suggested that the present is not wholly unlike the case of an omission fully to comply with the requirements of the law in entering judgment by confession without process. This question, like that above considered, came up in Mitchell v. Van Buren (27 N. Y., 300), where it was held that the court might allow an amendment supporting the judgment by the signing and verifying a new statement stating the facts more specifically. It was there urged that the judgments contemplated in such cases were statutory proceedings as distinguished from judgments of the courts; and that if the statute was not complied with the proceeding was void and incapable of amendment. This contention was overruled: and Judge Denio, in giving the opinion of the court said: “The courts, as is well known, have a jurisdiction over their records and have always been accustomed to relieve, upon summary application against the errors and mistakes of their officers and the suitors of the court by amendments and by allowing papers to be filed and entries made nunc pro tune in furtherance of justice.” The learned judge also referred to the provision of the Code permitting corrections of errors and omissions to be made in furtherance of justice, and held such provision applicable to the case. This decision settled the law in that regard.
(2.) It is insisted that even admitting that there was originally a binding agreement to refer the matter in controversy (which is disputed and which question will be hereafter considered) the defendants had the right to make it, as they did so, before the surrogate on the application to him for its approval. I conclude, otherwise, the agreement had been accepted and had taken effect. It had become part of the record in the court—had been acted upon as a binding agreement, giving consent to the entry of the order of reference. It had been the basis of proceedings in the court and before the referee appointed under its authority. Rights had been acquired on the faith of it. *7 It was, as I think, beyond the right of revocation by the defendants.
(3.) But it is urged that in point of fact there was no binding agreement to refer; and for the reason that the paper was signed by but one of the executors; whereas, to be valid and operative, it should have been signed by both the executors and executrix.
In Murray v. Blatchford (1 Wend., 583), the question was presented whether two administrators could, without the concurrence of the third administrator, make a valid release. The question was decided in the affirmative, and further that this might be done even against the will of the third. As regards executors, it was there remarked that such power seems never to have been-questioned; and the rule laid down in 3 Bacon’s Abr,, ex’rs, etc., Adams, D., is cited with the approval as follows: If a man appoints several executors, they are esteemed in law as but one person representing the testator, and therefore the acts done by any one of them which relate either to the delivery, gift, sale, payment, possession or release of the testator’s goods, are deemed the acts of all; for they have a joint and entire authority. “ In Douglass v. Satterlee (11 John., 22), it was said that it was well-settled that each executor has the control of the estate and may release, pay or transfer without the agency of the other.” These early decisions have been recognized and followed to the present time and stand unquestioned. Wheeler v. Wheeler, 9 Cow., 34; Clift v. White, 15 Barb., 73; People v. Keyser, 17 Abb. P. Rep., 215; Stuyvesant v. Hall, 2 Barb. Ch., 151; Bogert v. Hertell, 4 Hill, 495; Boughton v. Flint, 13 Hun, 207-8.
In Jackson v. Robinson (4 Wend., 436-441), it was held that one of several administrators could apply for a sale of the intestate’s real estate to pay debts. Executors may submit disputed claims to arbitration, Wood v. Tunnicliff (74 N. Y., 38), and under the above authorities, as executors are esteemed but one person in law, and that the acts done by one of several relating to the personality of the estate are the acts of all. I can see no reason why one of two executors may not also agree to an arbitration of a disputed claim against the estate. It is to be here noted that no question of fraud or collusion is here put forward. The question is one of naked power. Now we have seen that the decisions are to this effect that one of two executors may even against the will of the others, in the absence of fraud or collusion, dispose of the decedent’s property; may execute valid releases and compromises. If he may settle a claim, why may he not agree to a fair and just mode of determining the claim to the end that it may be adjusted and closed. The cases cited by the learned coun-, *8 sel for the defendants, holding that, where personal trust and confidence is bestowed upon several in order to the valid exercise of the power conferred, all must act and there is no right of delegation, are those like the case of arbitrators and those where authority is given by will or deed to several to sell real estate and the like. In these and similar cases the judgment and discretion of all become an important element in the exercise of the power. But •these cases are not, as I think, applicable to the present, which is governed, as it seems, by the decisions above cited. If correct in this conclusion the acting executor in this case had the right and power to make the agreement to refer for himself and his co-executor and executrix, and it becomes unnecessary to determine the question, very strenuously urged, that there is here abundant evidence to bind the co-executor and co-executrix to a ratification.
(4). It is further urged that the order of reference itself was not duly and properly obtained and entered according to the requirements of the statute. It seems to have been ■granted at special term; but was also a few days thereafter entered in the clerk’s office. I do not think that the formal granting of the order and entitling it at special term invalidated it. Matter of Knickerbocker Bank, 19 Barb., 602; Dresser v. Van Pelt, 15 How., 19. It was entered in the office of the county clerk, the clerk of the county being the clerk of the supreme court in and for the county. This was a compliance with the statute as regards the entry of the order—of course the agreement and order are not to be here upheld as amounting to an arbitration.
It needs but to be added that the above conclusion, if sound, necessitates a denial of the motion to vacate and set aside the order.