## AARON BORDWELL, Respondent, *v.* SAMUEL D. COLLIE, Appellant.

The owner of a chattel, having mortgaged it, afterward transferred it to the defendant, who sold to D., who sold to the plaintiff, who himself sold to one S., all the successive vendees purchasing without knowledge of the mortgage. The mortgagee having demanded the property of S., he yielded it up without litigation, and received back from the plaintiff the price paid to him, who, on application to D., his vendor, received an assignment of his claim against the defendant. In the action brought by the plaintiff to recover of the defendant the price he had paid,—*Held*, that the failure to litigate the title either by the plaintiff or his vendee, was no defence, and that such last purchaser properly restored the property without compelling the mortgagee to resort to judicial proceedings to establish his claim.—*Held*, also, that although plaintiff had no cause of action directly against the defendant, he could sue as assignee of D., and that D, assigned a good cause of action.

Where personal property is sold with an express or implied warranty of title, the rule is the same as to eviction as upon a covenant for quiet enjoyment in deeds of real estate. A party, however, holding under a covenant for quiet enjoyment, when evicted, may maintain an action against his immediate vendor, or may, at his election, proceed against a remote grantor, who has conveyed the land with similar covenants. In the case of personal property, the vendee can only resort to his immediate vendor, as there is no privity of contract between the last vendee and a remote vendor.

(Argued April 17th; decided May 23d, 1871.)

APPEAL from the judgment of the late General Term of the Supreme Court, in the eighth judicial district, affirming the judgment upon a verdict at the Erie Circuit in favor of the plaintiff. (Reported below, in 1 Lans., 141.)

In November, 1866, Charles Richter was the owner of a horse, upon which, together with other personal property, he

gave a mortgage to one Sonnick, which was duly filed. Subsequently, Sonnick assigned the mortgage to one Stillwagen. In 1867, Richter sold the horse to the defendant, he to one Douglass, he to the plaintiff and the plaintiff to one Smith. While the horse was in Smith's possession, the assignee of the mortgage took the horse from Smith, who yielded possession to him without suit. The mortgage was due and unpaid; each vendor was in possession of the property at the time it was sold by each, and all acted in good faith except Richter. Smith, after giving up possession of the horse, demanded the money he had paid the plaintiff, which the latter paid him. The plaintiff then demanded payment from Douglass, his vendor, and Douglass, to satify this claim, assigned his claim against the defendant. This assigned claim the defendant refused to recognize, and the plaintiff brought this action. A motion to nonsuit, made by the defendant, was refused.

*George Wadsworth,* for the appellant, cited *Bruff* v. *Mali* (34 How., 338, 343); *Case* v. *Hall* (24 Wend., 102); *Vibbard* v. *Johnson* (19 John., 77); *Livingston* v. *Bain* (10 Wend., 384); *Blasdale* v. *Babcock* (1 John., 516); *Barney* v. *Dewey* (13 John., 224); Ross on Vendors, 334; *Delaware Bank* v. *Jarvis* (20 N. Y., 226).

*William H. Gurney,* for the respondent, cited *Greenvault* v. *Davis* (4 Hill, 643); *St. John* v. *Palmer* (5 Hill, 599); *Fowler* v. *Poling* (6 Barb., 165); *Hamilton* v. *Cutts* (4 Mass., 349); *Sweetman* v. *Prince* (26 N. Y., 224); *Burt* v. *Dewey* (40 N. Y., 283).

GROVER, J. The ground on which the motion for a nonsuit was made, was that the validity of the lien of the chattel mortgage upon the horse had not been established by judicial proceedings. If this was necessary, the judge erred in not granting the motion, as the evidence was that the vendee of the plaintiff gave up the horse to the assignee of the mortgage when demanded, upon being satisfied that the lien was

valid against the title acquired by the purchaser. While the latter retained possession of the horse under the title acquired by his purchase from the plaintiff, he had no cause of action for the breach of the implied warranty of title, although able to prove that no title, whatever, was acquired thereby. (*Case* v. *Hall*, 24 Wend., 102.) The rule, when the vendor fraudulently represents that he has title, is different. In the latter case, an action to recover damages for the deceit will lie, although there has been no disturbance of the possession. (Same case and cases cited.) The rule in cases of warranty, express or implied, was derived from the analogy to that adopted in cases of covenants of quiet enjoyment in conveyances of real estate. (See case, *supra*.) An eviction is an essential prerequisite to a recovery in the latter class of cases. Yet this need not be by process of law. It is enough that on a valid claim made by a third person, under title paramount, the plaintiff voluntarily yielded up the possession. If this is done without legal contest, the plaintiff must prove that the title to which he yielded, was paramount to that acquired by him under his deed from the defendant. (*Greenvault* v. *Davis*, 4 Hill., 643 ; *St. John* v. *Palmer*, 5th id., 591.) The rule adopted in these cases has been regarded since as the law of the State, and as such applied to like cases. Actions for a breach of warranty, express or implied, upon a sale of personal property, we have seen are within the same principle, in this respect, and require the application of the same rule. To hold that a purchaser of personal property must become a wrong-doer by withholding it from the true owner, and compel him to resort to an action for its recovery, to entitle him to redress for a breach of warranty of title, would be absurd. Such a rule cannot be supported by reason, or sound policy. It must stand only upon authority, if at all. But there is no well considered case holding any such doctrine. In *Rew* v. *Barber* (3 Cowen, 272), an action for breach of warranty of title was sustained, where the property had been taken from the purchaser by the sheriff, under a levy made previous to the sale. That differs in no respect in principle

from the present case. The sheriff, by his levy, acquired, a property in the goods for the purpose of satisfying the execution. This was nothing more than a title paramount to the judgment debtor. The sheriff had the right to reduce the property to his possession wherever he could find it. This is the right, also, of any owner of personal property. The fact that the former may use force in the recaption of the property, if necessary, while the latter may not, but must resort to his legal remedy, if unable to get possession personally, does not affect the question. The title is no more determined judicially when taken by the sheriff, than it is when taken by any other owner. In *Sweetman* v. *Prince* (26 N. Y., 224), and in *Burt* v. *Dewy* (40 id., 283), the judges, who delivered opinions, declared that a recovery might be had against his vendor, by a party upon a breach of warranty of title, who had surrendered possession to the true owner upon demand, but that in such case he must prove that the title of such owner was paramount to that of his vendor. Although it was unnecessary to determine the question in either case, and the cases cannot, therefore, be considered as authority, yet the opinions of the learned judges should be considered in determining the question. My conclusion upon both reason and authority is that the law was correctly laid down in these opinions. It follows that the plaintiff's vendee was entitled to recover of him upon the implied warranty after surrendering the horse to the assignee of the mortgage, and that when the plaintiff had paid his vendee, he had a right of action against his vendor. But the defendant did not sell the horse to the plaintiff, but to Douglass, who sold to the plaintiff. The counsel for the appellant was right in the position that there was no privity of contract between the plaintiff and defendant, and that, therefore, upon the above facts, the latter could not maintain an action against the former. He could proceed only against Douglass, his immediate vendor, between whom and himself such privity did exist. In this respect, the analogy between a warranty of title, express or implied, upon a sale of personal

property, and a covenant of quiet enjoyment in a conveyance of real estate, fails. In the latter, a party, when evicted, may maintain an action against his immediate vendor, but he is not obliged to resort to him, but may proceed against a remote grantor, who has conveyed the land with a similar covenant. But this is for the reason that covenants as to title run with the land, and enure to the benefit of all acquiring the same title to the land. Not so in respect to a warranty upon the sale of personal property. That does not go to a subsequent purchaser. The plaintiff must, therefore, if he maintains the action at all, do so as the assignee of Douglass. But it is insisted by the counsel for the defendant that Douglass had no cause of action against the defendant until he had paid the plaintiff or satisfied him in some way for his claim against him ; and that, not having done so, nothing passed to the plaintiff, under the assignment of Douglass to him of his demand against the defendant, founded upon the breach of warranty upon the sale by the latter to Douglass. This position is specious, but is it sound ? Douglass, upon satisfying the plaintiff for his damages in any way, would have the right to recover of the defendant either the price paid by him for the horse, or his value at the time of the sale, irrespective of the amount paid by him to the plaintiff. It is not material, in the present case to determine whether the price paid or the value of the horse was the measure of damages, as that question was not raised upon the trial. From the facts found, it appears that the plaintiff had a valid claim against Douglass ; that he called upon him for payment, and that he proposed to assign to him his claim against the defendant in satisfaction of the claim of the plaintiff against him, and that the plaintiff agreed to, and did take the assignment upon these terms. We have already seen that the cause of action of Douglass against the defendant would become perfect when he had satisfied the claim of the plaintiff against him. Then he could either prosecute the defendant himself or transfer the cause of action to another. I am unable to see any reason why he might not satisfy the claim of the pl

against him and transfer the cause of action thereby created against the defendant by one and the same act. That is precisely what was done in the present case. The objection is founded upon the merest form, having no bearing upon the substantial rights of the parties. But the counsel says that Douglass must actually pay the plaintiff's claim before he has any cause of action against the defendant. This, in substance, he did by the assignment. The defendant can never be called upon by any other party for satisfaction. In this respect the case is entirely different from *Burt* v. *Dewey* (*supra*), relied upon by the counsel for the defendant. In that case the owner, from whom the horse had been stolen, had a right to prosecute to judgment each one who had converted the horse, unless he had obtained satisfaction from one of them. Had Burt recovered judgment against Dewey his payment of the same, would have been no defence to Dewey in an action brought by the owner against him for his conversion of the horse, unless he could show that Burt had paid the judgment recovered by the owner against him. The judgment appealed from must be affirmed with costs.

Chief Judge and PECKHAM and ANDREWS, JJ., concur. ALLEN, FOLGER and RAPALLO, JJ., dissent.

Judgment affirmed.