JAMES F. CONVERSE, APPELLANT, v. JOHN MINER AND JANE FOREMAN, AS ADMINISTRATORS, ETC., OF NATHAN FOREMAN, RESPONDENTS.

*Statute of limitations—an administrator may avail himself of it upon the hearing of a disputed claim before a referee, without pleading it—when an action for false representations is barred by it—when an action for a breach of warranty of title arises.*

In the spring of 1865, one Foreman entered into a verbal agreement with one Jenkins and J. N. Wood, by which it was agreed that he should buy the milk from certain dairies at one cent per pound, and have it manufactured

into cheese at a factory, and that each should share equally in the profits or loss of the transaction. Shortly thereafter Foreman, without the knowledge or consent of Jenkins, or J. N. Wood, entered into an agreement with the plaintiff, Converse, and one Nathaniel Wood, by which he assigned to each of them a quarter interest in his contract for the purchase of the milk, they then knowing nothing of his former agreement with Jenkins and J. N. Wood.

The cheese made at the factory was sold by a committee, of which Converse and S. T. Wood were members. The sales were made and the money received by them. While the money was in their hands, they were notified of the agreement made by Jenkins and J. N. Wood with Foreman, but in disregard thereof they paid one quarter of the profits arising on the sale of the cheese made from the milk so purchased by Foreman, to him, one-quarter to Nathaniel Wood, one-quarter to Converse, and one-quarter to Jenkins. In 1867, Jenkins recovered a judgment against Converse and S. T. Wood, for the difference between the one-fourth of the profits which he had received, and the one-third thereof to which he was entitled, and also, as the assignee of J. N. Wood, for the one-third to which he was entitled. On May 7, 1869, Converse and Wood each paid one-half of an execution issued upon the said judgment.

Foreman died in March, 1872, and letters of administration upon his estate were issued to the defendants, to whom Converse presented a claim for damages arising from the agreements so made by Foreman, which, being disputed by them, was referred under the statute.

*Held*, that Converse by his agreement with Foreman had acquired a sixth interest in the milk contract, instead of a fourth interest, as provided by the contract.

That, so far as Foreman was liable to him, for fraud or false representations as to the facts of his ownership of the said milk contract, or as to the extent of his interest therein, the cause of action arose in 1865, and was barred by the statute of limitations.

That the defendants could interpose the statute of limitations as a defense, upon the hearing before the referee, without having pleaded it.

That for the breach of warranty as to Foreman's title to the said contract, Converse could recover as damages only the difference between one fourth and one-sixth of the proceeds, viz , one-twelfth.

That his right to sue to recover damages for the said breach of warranty did not arise until he had paid the execution issued on the judgment recovered against him by Jenkins, and was not barred by the statute of limitations.

APPEAL by the plaintiff from an order of the Oneida Special Term refusing to confirm the report of a referee, and setting aside the report and ordering a new trial before another referee. The plaintiff presented a claim to the defendants as administrators of Nathan Foreman, deceased, and they rejected it and entered into a stipulation to refer it, which was approved by the surrogate of

Jefferson county and filed with the clerk of that county, and thereupon an order of reference was made. The referee heard the parties and made a report in favor of the plaintiff, which was set aside.

*S. C. Huntington,* for the appellant.

*Levi H. Brown,* for the respondent.

HARDIN, J.:

In the spring of 1865, Stearns and Kiblin offered to sell their milk from their dairies for that season for one cent per pound. Thereafter, and about May 25, 1865, Foreman, Jenkins and Joseph N. Wood made a verbal agreement to the effect " that Foreman should purchase said milk at that rate for the benefit of the three, and that each should share equally in the profits or loss of the transaction." The milk was to be manufactured into cheese at the factory, and to be paid for from the proceeds of the sales, as the sales should be made. In pursuance of this agreement Foreman purchased the Stearns and Kiblin milk, and it was delivered at the factory and manufactured into cheese, and the cheese sold ; and the net profits of the transaction were the sum of $588.43.

Shortly after the purchase Foreman informed Jenkins and J. N. Wood of such purchase by him, and the three jointly became entitled to the profits, each being entitled to one-third thereof, to wit, $196.14. Very soon after he had made the purchase as aforesaid, Foreman, without the knowledge or consent of Jenkins and J. N. Wood, or either of them, made a verbal arrangement with the plaintiff, Converse, and one Nathaniel Wood, by which he agreed to let them each have a quarter interest in the Stearns and Kiblin milk. At the time of the purchase by Converse and Nathaniel Wood, they knew nothing of the above arrangement with Jenkins, Foreman and J. N. Wood. The sales committee of the factory for that season consisted of Converse, Simeon T. Wood and Epenetus Wood. The first two made the sales and received the money. Before they paid over the moneys or any of them, they were informed of the claims of Jenkins and J. N. Wood, by virtue of the bargain between them and Foreman, to a third each of the surplus arising

from the transaction with Stearns and Kiblin. After such information Converse and S. T. Wood, two of the committee, paid one-fourth of said surplus to Foreman, one-fourth to Nathaniel Wood, one-fourth to Converse, and one-fourth to Jenkins, except the sum of $53.34, part of the last sale. In January, 1866, J. N. Wood demanded of the committee his interest in the surplus; the committee did not pay it, and on May 30, 1866, he assigned all his interest therein to Jenkins. In 1867 Jenkins brought a suit against Converse, S. T. Wood and Epenetus Wood, the committee, and Foreman, to recover upon his individual claim the difference between the one-fourth paid to him and the one-third to which he was entitled (besides his interest in the last sale), and to recover one-third of said surplus as the assignee of J. N. Wood; and the action was referred to Mr. H. Merwin, attorney, who reported in favor of Jenkins upon both branches against Converse and S. T. Wood. (The complaint was dismissed without costs as to Epenetus Wood.) Judgment was entered upon the report against Converse and S. T. Wood, with costs of the action, and an execution was issued upon the judgment, and May 7, 1869, Converse and Wood paid up the judgment and execution, each paying one-half thereof to the sheriff.

March 5, 1872, Foreman died, and letters of administration upon his estate were issued to the defendant, March 16, 1872. A claim was presented to the defendants by Converse, and disputed, and by a stipulation entered into under the statute, and an order entered in the Jefferson county clerk's office March 11, 1874, it was referred. The referee in this case has found that "*Converse* and S. T. Wood *had notice* during the season of 1865, of the claim of Joseph N. Wood and of said Jenkins to *one-third* interest each in the net surplus or profits of said milk, by virtue of an agreement between them and the said Foreman." The referee in the former action found, as a matter of law, that Jenkins and J. N. Wood "were each entitled to one-third of the profits or surplus proceeds of said milk." That conclusion, as we have seen, stands unreversed. It is therefore conclusive upon Converse and Foreman, as they were both parties to that action. We must accept this conclusion as conclusive upon their rights to its full

extent in the further consideration of the case. Foreman and his administrators are estopped from questioning it. And it is equally binding upon Converse, the plaintiff here, who was a defendant in that action. It follows, therefore, that when the arrangement was completed between Foreman and Jenkins and J. N. Wood, the latter two became assignees of two-thirds the net surplus, and Foreman was the owner of only one-third thereof. He could not, therefore, in fact sell or assign to other parties thereafter more than one-third of the net surplus, or more than one-third part of the profits in the milk contract with Stearns and Kiblin. When therefore Foreman " made a verbal arrangement with Converse and Nathaniel Wood by which he agreed to let them each have a quarter interest in said Stearns and Kiblin milk," he undertook to sell or assign more than he owned. He owned one-third only and undertook to sell one-half. For, as we have seen, Jenkins and J. N. Wood were by a prior arrangement the owners, as original contractors, through Foreman, acting in their behalf, or by virtue of his agreement with, and assignment to them. This brings us to see that the sale to Converse and Nathaniel Wood of one quarter to each, was an attempt on the part of Foreman to sell more than he possessed or owned.

Most assuredly it was competent for him to assign to Converse and Nathaniel Wood one-third of the surplus—or net profits. Such, in effect, is the first conclusion of law stated by the learned referee in the former action. He says that Foreman, after the purchase of the milk, had no right to transfer to Converse and Nathaniel Wood a quarter interest therein, to the prejudice of the rights of Jenkins and J. N. Wood. It must be assumed from the subsequent language of the report, that the referee intended to say " a quarter to each, Converse and N. Wood," as he allows Jenkins to recover for his one-third net surplus in his *own* right and as assignee the one-third for J. N. Wood's share—or the balance due thereon.

In the former action the referee found as a matter of law that " Converse and S. T. Wood having received notice of the rights of Jenkins and J. N. Wood before they paid any part of the said surplus, paid a quarter interest to other parties at their own risk." Considering this with the context, it seems to be a conclusion that so

far as Converse and S. T. Wood paid out in disregard of the two-thirds ownership of Jenkins and J. N. Wood, they paid at their *own risk*. Accepting the conclusion reached by the referee in the first action, we must hold that Jenkins and J. N. Wood became purchasers of two-thirds the net surplus or interest in the contract for the milk, and then there remained one-third, owned by Foreman.

While thus owning only one-third, he undertook to sell to Converse and Nathaniel Wood each a quarter—thus undertaking to sell to them one-half interest, while he only owned one-third. Converse and Nathaniel Wood took, under their agreement with Foreman, all the interest he had to sell or assign—to wit, one-third. Thus Converse and Nathaniel Wood each became the owner of one-half of one-third. They failed to acquire one-half, as Foreman only had one-third. His vendees, Converse and Nathaniel Wood, could only acquire such interest as he had remaining at the time of his sale to them. It was found as a fact in the former action that Converse and Nathaniel Wood knew nothing of the arrangement between Jenkins and J. N. Wood and Foreman, at the time they arranged with him for one quarter each. Foreman therefore sold to them, so far as the difference between one-third and one-half, what he did not own. He thus became liable for a breach of his contract of warranty of title as to the excess sold over and beyond what he owned. (*Bank* v. *Jarvis*, 20 N. Y., 228; *Fake* v. *Smith*, 7 Abb. Pr., N. S., 107; *Furniss* v. *Ferguson*, 15 N. Y., 437; and *S. C.*, 34 Id., 485.) Upon his warranty of title or misrepresentation of the facts of his ownership he became liable to respond to them for a breach of his agreement, or for damages sustained by them by reason of his fraud. So far as he was liable, by reason of *the fraud*, if it was a fraud, his liability arose in 1865, more than six years prior to the filing of the claim herein and the commencement of this action. (*Andrew* v. *Newcomb*, 32 N. Y., 417.) The claim, so far as it rested upon his fraudulent sale of what he did not own, was barred by the statute. (*Sweetman* v. *Prince*, 26 N. Y., 224; *Foot* v. *Farrington*, 41 Id., 164; *Northrop* v. *Hill*, 57 Id., 351.)

The defense was sufficiently raised upon the hearing. It was not necessary to plead it. It was raised upon the trial in various

forms, and that must be held a sufficient assertion of the defense to enable these administrators to avail thereof. (*Bucklin* v. *Chapin*, 1 Lans., 443 ; *Tracy* v. *Suydam*, 30 Barb., 110 ; *Hultslander* v. *Thompson*, 5 Hun, 349.)

As we have stated, Foreman being the owner of one-third only, he undertook to sell one quarter to the plaintiff and one quarter of the whole to Nathaniel Wood. Assuming that the effect of his contract with them would vest in each one-half of his ownership at the time it was made, it follows that the plaintiff acquired only one-sixth, instead of one-fourth. If we measure the interest contracted to be sold to the plaintiff, by its fractional share of the proceeds of the contract with Stearns and Kiblin, as it proved to be worth, we find that the attempted sale was one-fourth of $588, the surplus, viz., $147 ; whereas the actual transfer to the plaintiff was one-sixth of said surplus, viz., $98, or $49 less than he agreed to sell to the plaintiff. However, it appears that the plaintiff received one-fourth of the proceeds or surplus, and enjoyed and kept the same as owner, by the consent of Foreman, and in the belief that he was entitled thereto, as he was assured by Foreman until after the decision of the former action. The determination of that action was such that it was established conclusively between the plaintiff and Foreman, that the plaintiff Converse did not acquire from Foreman a right to one quarter of the surplus. To the extent of the difference between one-fourth of the surplus and one-sixth of the surplus, Converse was evicted, or his title shown not to exist, and a breach of the warranty of title was shown. The contract in respect to such portion of the surplus, or interest in the milk contract, was broken. As we have seen, the essence of the contract of warranty, in the present case between Foreman and Converse, was that Foreman sold and had a perfect title to the one-quarter interest in the milk contract, or the surplus produced by it (to wit, $147) at the time of the sale, that the same was unencumbered, and that the vendee, Converse, should acquire by his purchase a " title free and clear, and should enjoy the possession without disturbance by means of anything done or suffered by the vendor Foreman." (*Dresser* v. *Ainsworth*, 9 Barb., 626 ; *Furniss* v. *Ferguson*, 15 N. Y., 437 ; *S. C.*, on 2d appeal, 34 Id., 488, op. by J. C. SMITH, J.)

Converse had a right to rely upon his warranty of title, till he was evicted, and when that took place his right of action for a breach of the warranty of title was complete, and his right of recovery upon payment of the difference between one quarter and one-sixth, became complete, or for a breach of the contract of warranty to that extent. (*Case* v. *Hall*, 24 Wend., 102.) In that case the court say, "Where, however, the vendee relies on the warranty of title express or implied, there must be a recovery by the real owner, before an action can be maintained." That case is approved in *Bordwell* v. *Collie*, (45 N. Y., 496), and GROVER, J., says : "The rule when the vendor fraudulently represents that he has title is different. In the latter case an action to recover damages for the deceit will lie, although there has been no disturbance of the possession."

If the property is taken by a paramount title, or even surrendered upon a demand, the vendee upon proof of those facts may establish a right to recover, of the vendor. The burden in such cases is cast upon the vendee to establish the paramount title. Such is the doctrine of *Sweetman* v. *Prince* (26 N. Y., 224); *Burt* v. *Dewey* (40 Id., 283); *Bordwell* v. *Collie* (45 Id., 497); *M'Giffin* v. *Baird* (62 Id., 329). It was held in *McKnight* v. *Devlin* (52 N. Y., 399), that a vendee of personal property in case of a failure of title to a portion thereof, is not bound to rescind the contract *in toto*, but may retain so much as he has secured a title to, and have his damages for the loss of the residue. The referee has allowed a recovery in this case, for one-half of the damages which were recovered in the former action by Jenkins. We have seen that the recovery then was the difference between one-quarter and one-third of the surplus, in the right of Jenkins, and by him of one-third of the surplus as assignee of J. N. Wood, thereby aggregating a recovery of five-twelfths, and the half would be represented by five-twenty-fourths or as two and one-half twelfths, which is the portion of the surplus awarded here as damages—while the difference between one-sixth, which the plaintiff acquired the right to in virtue of Foreman's assignment to him, and *one-fourth*, which he purchased, is one-twelfth. Thus stated it would appear that the recovery was for two and one-half twelfths, when it should not

have exceeded one-twelfth, if the surplus is resorted to as the criterion by which to measure the damages. But it is said in *Case* v. *Hall, supra,* that " in case of a breach of warranty the measure of damages is the purchase-money and interest." That rule would of course confine the damages to the sum paid for that portion of the one quarter sold, to which, as we have seen, the title failed. The referee has not found what sum was paid by Converse for the one quarter interest, nor are we able to ascertain from the evidence what, if anything, was the consideration for the purchase. We must hold, therefore, that the damages allowed by the referee were improper. A new trial was therefore properly allowed by the Special Term.

But there is another view of the case which must be considered. When Converse and S. T. Wood received the surplus moneys they held the same in trust for the parties rightfully entitled thereto. They had notice of the claim of Jenkins and J. N. Wood, and of the supposed transaction secondly made by Foreman. They therefore paid them out at their peril. As we have seen, Jenkins was entitled to one-third, J. N. Wood one-third, and the other one-third belonged to Foreman's assignees, to wit, Converse and N. Wood.

In the former action, Jenkins, less the one-fourth he had received voluntarily, recovered the one-third belonging to him, and he therefore did not recover any more than it was the duty of Converse and S. T. Wood to pay to him as his share and portion of the net surplus, in his individual right as original owner of one-third. So when Jenkins, as assignee of J. N. Wood, recovered one-third of the surplus which by the original agreement belonged to J. N. Wood, and which had been by him assigned to Jenkins, he only recovered what it was the duty of Converse and S. T. Wood, as committee men and trustees, to pay over for liquidation of the share of J. N. Wood. Thus we see that two-thirds of the surplus moneys reached the proper hands, and Converse and S. T. Wood were made liable for the funds, as they had paid them out at their own risk. The other one-third, as we have seen, belonged to Converse and Nathaniel Wood, as the assignees of Foreman. Thus stated, we see that one-quarter of the net proceeds, paid over by Converse and S. T. Wood to Foreman, were paid under a

mistake of fact, and to Foreman when he was not entitled to receive them. Whether the statute of limitations will be a defense to the claim of Converse to recover for the one-quarter of the surplus paid over by Converse and S. T. Wood to Foreman, cannot well be conclusively determined upon this appeal, as the referee has not found the circumstances specificially attending the transaction in that regard, nor does the evidence indicate whether Foreman received the one quarter claiming to own the same to the exclusion of all right thereto by Converse, nor that any demand was made of Foreman therefor. (*Boughton* v. *Flint*, 74 N. Y., 476.) The questions will be more clearly presented in another trial, which must take place, if the views already expressed prevail.

These views lead to the conclusion that the Special Term properly refused to confirm the report of the referee, and properly allowed the exceptions thereto, and directed a new trial before another referee, with costs to abide the event.

We should affirm the order, with costs of the appeal.

TALCOTT, P. J., and SMITH, J., concurred.

Order affirmed, with costs.