(62 Misc. Rep. 475.)

## BARASCH v. KRAMER et al.

(Supreme Court, Appellate Term. February 26, 1909.)

1. SALES (§ 263*)—WARRANTY OF TITLE.

The owner of premises in which laundry tubs were installed entered into an agreement to sell the premises, and the contract provided that the sale was to include all the personal property contained in the premises and used in connection therewith. In pursuance of such contract, the owner conveyed the premises and their appurtenances to the other party by a full covenant warranty deed. *Held* that, whether or not the tubs passed by the conveyance, the owner warranted his title thereto, since, if they were fixtures, they were covered by the covenant in the deed, and, if not, a warranty of title would be implied by their sale as personal property.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 749; Dec. Dig. § 263.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. Lis Pendens (§ 7*)—Commencement of Action—Necessity of Filing Action Papers.

The rule that every person is privy to a judgment who, after the bringing of an action, has succeeded to an estate or interest held by one who was a party to the judgment therein, does not apply in the state of New York, where actions in courts of record are commenced by a summons issued out of an attorney's office, of which no record is made in the office of the clerk of court, and which is followed by a complaint, which need not be, and in most cases is not, filed until the judgment roll is made up, and hence no lis pendens is created, which will bind the purchaser to a judgment in a suit, unless there be a process and a bill or complaint on file in which the claim upon the property is set forth.

[Ed. Note.—For other cases, see Lis Pendens, Cent. Dig. §§ 13–15; Dec. Dig. § 7.*]

3. Indemnity (§ 14*)—Warranty of Title—Satisfaction of Incumbrance—Recovery Over—Judgment.

Though a seller of property may satisfy a claim of a purchaser for defect in title to some of the property sold without awaiting legal action to compel such satisfaction, and can recover from the person from whom he himself purchased the property, provided the latter's title was in fact bad, still, in order to do so, he must affirmatively establish the defect in the title by proof independent of a judgment in an action involving the same property to which his grantor was neither a party, nor called in to aid in its defense, and the fact that he believed or had reasonable cause to believe his grantor's title was bad did not entitle him to recover from his grantor what he had paid the purchaser.

[Ed. Note.—For other cases, see Indemnity, Cent. Dig. § 41; Dec. Dig. § 14;* Sales, Cent. Dig. §§ 1279, 1280.]

4. Sales (§ 472*)—Conditional Sales—Record of Bill of Sale—Execution in Duplicate—Effect.

Under section 115 of the lien law (chapter 418, p. 541, Laws 1897). providing that the sections relating to the filing of certain conditional bills of sale shall have no application to a conditional sale of household goods, if the contract for sale is executed in duplicate, and one duplicate delivered to the purchaser, the effect of the record or delivery of a duplicate is not to establish either the existence or the validity of the conditional bill of sale upon the merits, but simply to leave the matter open to proof upon the merits, and to save the bill of sale from the rule which would otherwise render it invalid against subsequent purchasers from the buyer, regardless of what its merits might be.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 1370; Dec. Dig. § 472.*]

5. Sales (§ 472*)—Conditional Sales—Title to Goods—Presumptions.

Where a contract of conditional sale binds the purchaser to pay for the goods within 60 days, and provides that the title shall remain in the seller until full payment, the presumption as to a subsequent purchaser of the goods, who was a total stranger to the original transaction, and to whom the original purchaser transferred them long after the expiration of the 60 days, is that payment was made as agreed upon in the original contract and that the title had passed to the vendor therein.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 1376; Dec. Dig. § 472.*]

6. Trial (§ 54*)—Reception of Evidence—Limitation of Purpose.

Lack of evidence to rebut a presumption in favor of a purchaser of personal property that title thereto had passed to the purchaser's vendor from his prior vendor was not supplied by evidence of a judgment in an action to which he was not a party, holding otherwise, where counsel stated that the judgment was offered in evidence solely for another pur-

pose, since, where a party so limits the purpose for which his evidence is introduced, the adverse party is entitled to rely upon its effect being similarly limited.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 126; Dec. Dig. § 54.*]

Ford, J., dissenting.

Appeal from Municipal Court, Borough of Manhattan, Second District.

Action by Sigmund W. Barasch against Osher Kramer and another. From a judgment for plaintiff, defendants appeal. Reversed, and new trial ordered.

Argued before GIEGERICH, HENDRICK, and FORD, JJ.

Morris A. Rabinovitch (Charles Schwick, of counsel), for appellants.

Feltenstein & Rosenstein (Abraham Rosenstein, of counsel), for respondent.

GIEGERICH, J. The action is to recover damages for breach of warranty of title upon the sale by the defendants to the plaintiff of certain laundry tubs contained in the premises No. 319 East Seventy-Fifth street, in the borough of Manhattan, New York City. The case was submitted upon stipulations and concessions made in open court, from which the following appear to be the material and undisputed facts:

On February 28, 1903, one Lottie Kurzynski was the owner of the premises in question, and entered into an agreement with the Union Granite Company by which the latter made a conditional sale of certain laundry tubs, which were afterwards installed in the house, and still remained there at the time of the trial of this action. By that agreement the purchaser undertook to pay for the tubs within 60 days after their delivery, and title was to remain in the vendor until final payment. On March 8, 1903, this agreement was duly filed in the office of the register of the county of New York, and it was duly refiled on or before March 8, 1904. Subsequently to March 8, 1904, but within a year thereafter, the vendor of the tubs, or its assignee, commenced an action against the purchaser and the then owner of the premises to recover the tubs or their value. On February 16, 1905, after several mesne conveyances, the defendants became the owners of the premises for value and without notice of the pending action or the claims upon which it was based. On October 17, 1905, the plaintiff entered into an agreement in writing with the defendants for the purchase of the premises in question for a certain price, and this contract provided that the sale was to include "all personal property contained in said premises and used in connection therewith." On December 1, 1905, the defendants, in pursuance of the contract just mentioned, conveyed the premises and their appurtenances to the plaintiff by a full-covenant warranty deed; the tubs being then installed in the house. Thereafter the plaintiff entered into a contract of sale, similar in its terms to the one last mentioned, with one Fannie Weinfeld, and later conveyed the premises and their appurtenances

to her by a full-covenant warranty deed, and she was still the owner when this action was commenced. Neither the plaintiff nor Mrs. Weinfeld had any knowledge or notice of the then pending action in replevin to recover the tubs when they took title, and both were bona fide purchasers for value. On October 15, 1906, and subsequently to the conveyance to the present owner, Mrs. Weinfeld, judgment was entered in the replevin action in favor of the plaintiff therein for the recovery of the tubs or their value. This judgment was entered upon the default of the defendants in the action, who had answered, but did not appear when the cause was called for trial. The defendants in this action were not parties to the replevin action. Thereafter execution was issued upon the judgment in the replevin action, and the present owner of the property, Fannie Weinfeld, in order to prevent the removal of the tubs, paid to the sheriff the sum of $150, which, upon her demand, the present plaintiff repaid to her. The value of the tubs was at all times $143.

Upon these facts the trial court gave judgment in favor of the plaintiff for $143 and costs, and I think it is obvious that the judgment must be reversed. The record does not inform us whether the tubs were in any way affixed to the realty, to enable us to judge whether, as between grantor and grantee, they would pass by a conveyance of the land. If so, they were covered by the covenants in the deeds; and, if not, a warranty of title would be implied upon their sale as personal property, so that the same result would follow in either case upon a failure of the title. But the difficulty with this case is that there is no competent evidence that the defendants' title was defective. The judgment in the replevin action, which was recovered in the Supreme Court, is not evidence against them, and their counsel so insisted on the trial. The plaintiff's counsel argues that the judgment was admissible against the defendants, and cites 21 Am. & Eng. Ency. of L. (1st Ed.) p. 139, which lays down the principle that:

"Every person is privy to a judgment who has succeeded to an estate or interest held by one who was a party to the judgment, this succession taking place after the bringing of the action."

The rule so laid down is not the law in this state, and would be a harsh and illogical rule in any state having a practice similar to ours, where in courts of record the action is commenced by a summons, which is issued, not out of court, but out of an attorney's office, and of which no record is made in the office of the clerk of the court, and which is followed by a complaint, which need not be filed, and, as a matter of fact in the vast majority of cases, is not filed, until the judgment roll is made up, notwithstanding the imperative form of the provisions of section 824 of the Code of Civil Procedure, which requires the filing of the summons and of each pleading in an action within 10 days after the service thereof. There is no penalty for a failure to comply with such direction, however, and it is a matter of common knowledge that both the summons and the complaint are retained in the office of the plaintiff's attorney until the judgment roll is made up, when for the first time they are filed in court.

When actions could be commenced only by process issued out of

the court, and a record was made of such process, and when the pleadings were required to be filed, and were filed, in the court, it was entirely fair to charge a purchaser of personal property with notice that a suit affecting the title to such property had been commenced against his vendor. Under our present method of practice, however, the facts on which such a rule was based have ceased to exist, and for the reasons pointed out and discussed at great length in Leitch v. Wells, 48 N. Y. 585, that old common-law rule is not in force in this state, and no lis pendens is created which will bind a purchaser to a judgment in a suit unless there be a process and a bill or complaint on file in which the claim upon the property is set forth. Further, on the question of privity, see Campbell v. Hall, 16 N. Y. 575; Zoeller v. Riley, 100 N. Y. 102, 2 N. E. 388, 53 Am. Rep. 157; Masten v. Olcott, 101 N. Y. 153, 4 N. E. 274.

It is a part of the case of the one seeking to introduce a judgment as evidence to show the filing of the summons and complaint (Leitch v. Wells, 48 N. Y. 612) prior to the date of the acquisition of title by the purchaser against whom the judgment is sought to be introduced in evidence. Furthermore the plaintiff's counsel expressly restricted the purpose for which he offered the judgment in evidence to showing:

"That there was made upon him [plaintiff] a demand; that he had reasonable cause to believe that he or his subsequent grantee, to whom he had given a deed, would be imperiled or prejudiced in his rights; and it is offered merely and only for the purpose of proving that plaintiff had reasonable ground to believe that his claim or title had been attacked and could pay the claim."

While the plaintiff undoubtedly had the right to satisfy the claim of his grantee without awaiting legal action to compel such satisfaction, and could recover from his grantor provided the latter's title was in fact bad (Sweetman v. Prince, 26 N. Y. 224, 232; Burt v. Dewey, 40 N. Y. 283, 286, 100 Am. Dec. 482; Bordwell v. Collie, 45 N. Y. 494, 497), the question is, not what he believed or had reasonable cause to believe, but what the fact was, and the plaintiff must affirmatively establish the defect in his grantor's title by independent proof, when that grantor was neither a party to a prior action in which the question was determined nor called in to aid in its defense (Id.).

The respondent appears to place some reliance upon section 115 of the lien law (chapter 418, p. 541, of the Laws of 1897), which was in effect at the time of the transaction in question, and which provides that the sections relating to the filing of certain conditional bills of sale shall have no application to a conditional sale of household goods, "if the contract for the sale thereof is executed in duplicate and one duplicate thereof delivered to the purchaser," which delivery of a duplicate was admittedly made in this case. Conceding all this, however, does not help the plaintiff's case. The question of fact would still remain whether the title continued in the vendor, or whether it had passed to the vendee through the performance by the latter of the condition of the bill of sale, above referred to, that payment should be made within 60 days after the delivery of the articles and

that title was to remain in the vendor until final payment. The only effect of the proper filing of the conditional bill of sale in an ordinary case, or of the delivery of a duplicate in the cases provided for under section 115, above referred to, is to save the bill of sale from the rule which would otherwise render it invalid against subsequent purchasers, regardless of what its merits might otherwise be. The effect of such recording or such delivery of a duplicate is not to establish either the existence of the validity of the conditional bill of sale upon the merits, but simply to leave the matter open to proof upon the merits.

The next question that arises, therefore, is what presumption is to be indulged in, in a case of this kind, where a contract to which both the plaintiff and the defendants are strangers is introduced in evidence, and where the terms of that contract bind the purchaser to pay for the goods within 60 days and that title shall remain in the seller until final payment. I think the inference which ought to be drawn under such circumstances is that the contract between such strangers was performed, and that payment was made as agreed upon, and that the title passed out of the vendor into the vendee. The lack of evidence on this point is not supplied by the judgment in the replevin action, because that was offered, in the language of the plaintiff's counsel, used at the time it was admitted in evidence, "merely and only for the purpose of proving that he [the plaintiff] had reasonable ground to believe that his claim or title had been attacked, and that he had reasonable ground to pay the claim."

We do not now have to pass upon the question whether, if the judgment had been offered and admitted for all purposes, it would have been binding upon the defendants upon any theory of notice of the pendency of the action by reason of the provisions of chapter 503, p. 1162, of the Laws of 1905, which, in repealing section 115, above referred to, expressly provided that such repeal should not affect any action or proceeding pending at the time the repeal took effect, which was on September 1, 1905, on which date the said replevin action, as above shown, was pending. As the judgment was offered only for a limited purpose, the defendants were entitled to rely upon its effect being similarly limited, both in the court below and on appeal. It is manifest that any other rule would lead to surprise and injustice.

My conclusion is that neither the fact of the delivery of the duplicate conditional bill of sale to the purchaser nor the judgment rendered in the replevin action, limited as the latter was in the purpose for which it was admitted, afford any evidence that there was a breach of warranty of title on the part of the defendants, and the judgment must therefore be reversed, and a new trial ordered, with costs to the appellants to abide the event.

HENDRICK, J. (concurring). On February 28, 1903, the Union Granite Company placed 20 washtubs in the building designated in the return as No. 319 East Seventy-Fifth street, then owned by Lottie Kurzynsky, who agreed to pay for said tubs within 60 days. Under the agreement between them, the seller retained title and the right

to remove the tubs on default of payment. This agreement of conditional sale appears to have been filed with the register March 10, 1903, and refiled March 8, 1904, and a duplicate copy was retained by each party. In November, 1904, said Lottie Kurzynsky conveyed the premises to Philip Menschel, and the deed was recorded the same month. Within a year after said March 8, 1904, said Union Granite Company commenced an action against Lottie Kurzynsky and the then owners of said premises to replevy said tubs. In February, 1905, said Menschel by a full-covenant deed conveyed said premises to defendants herein for $100 and other valuable considerations, subject to two mortgages. In October 1905, defendants entered into a written contract by which they agreed to sell to plaintiff herein, and he agreed to purchase, said premises, including the personal property used in connection therewith. The agreed consideration was $31,800, of which $1,000 was then paid, $6,675 was agreed to be paid on delivery of the deed December 1, 1905, and the remainder consisted of mortgages existing on the property. On December 1, 1905, said deed containing full covenants was delivered. The expressed consideration was $100 and other valuable considerations. The amount due on the first mortgage was $20,000, and on the second was $4,125. No reference was made to personal property. In October, 1906, judgment in favor of the Union Granite Company was entered in said action of replevin. An answer had been served by the defendants therein, but they did not appear at the trial. Plaintiff conveyed to Fannie Weinfeld by a deed containing the same conditions and reservations contained in the contract and deed executed to him by defendants. In order to prevent the removal of the tubs after judgment in replevin, it is probable that Fannie Weinfeld settled the granite company's claim. Neither plaintiff nor defendants had notice of the replevin action, nor did plaintiff have any notice of the bill of conditional sale or of the status of the tubs.

This action was tried on oral pleadings, and judgment rendered for $143, the agreed value of the tubs, with interest thereon and costs. While the substance of the oral pleadings has not been returned, it is evident, from the bill of particulars and the arguments of counsel on both sides, that plaintiff's claim arose out of defendant's failure to deliver the tubs, considered as personal property. I am of opinion that plaintiff has mistaken his remedy in proceeding upon the theory that the tubs are personal property, instead of bringing an action on the covenants in his deed. The contract under which the tubs were sold empowered the sellers "to enter upon said premises and remove some laundry tubs and fittings that have been annexed to the realty." They are referred to in the return as washtubs. On page 2 of respondent's brief they state that:

"In order to prevent the ripping out of the tubs, the plaintiff paid to the attorney for the present owner a certain amount."

The contract of sale by the granite company included fittings, which would be superfluous in the case of rural washtubs. While the evidence is meager, I think we may fairly infer that the washtubs and fittings sold in 1903 had become part of the realty before judgment

in replevin was recovered·in 1906. As between the granite company and Lottie Kurzynsky, the tubs remained personal property, as it was so stipulated in the contract between them. Perhaps they partook of the nature of household goods, so far as to be excepted from a conveyance of the premises, by virtue of the retention of duplicate copies of the contract under the provisions of the lien law as it then existed. This, however, is not clear, for, after laundry tubs have become set and attached to the water pipes, they are usually considered a substantial part of the building, and it is a general rule that as to such fixtures their "character as personalty will not be preserved, even by special agreement to accomplish that result." Davis v. Bliss, 187 N. Y. 83, 79 N. E. 851, 10 L. R. A. (N. S.) 458. In their essential nature, the tubs were fixtures. Bathtubs, wash basins, faucets, heating boilers, and water pipes are part of the realty. Cohen v. Kyler, 27 Mo. 122; Smyth v. Sturges, 108 N. Y. 495, 15 N. E. 544; Kirchman v. Lapp (Super. Buff.) 19 N. Y. Supp. 831; Jerym v. Hunter, 93 App. Div. 175, 87 N. Y. Supp. 546; Kirk v. Crystal, 118 App. Div. 32, 103 N. Y. Supp. 17.

In the construction of contracts, courts are not accustomed to stray far from the intention of the parties. In the present case that intention does not seem to be doubtful. Plaintiff probably saw the tubs as he saw other fixtures; but there is nothing in the evidence to show that he believed them to be personal property. It does appear that he had no notice of the conditional sale, the status of the tubs, or the action in replevin. As title to the tubs is not in question, I am inclined to hold that, as to strangers to the contract of conditional sale, ·the tubs are an inseparable part of the real estate, and, if plaintiff has suffered any loss, he must seek his remedy under the covenants of his deed.

There is another ground on which I must vote for reversal. The action was brought on the contract to convey, although at the time therein stipulated a deed of conveyance was duly executed and accepted. There was no covenant in the contract relating to personal property, no separate consideration for the transfer thereof, no reference thereto, except the following:

"All personal property contained in said premises and used in connection therewith are included in this sale."

Assuming that the tubs were personal property, and were in use in connection with the premises, they ought to have been included in the deed, or otherwise transferred as personal property. But, after accepting a deed which omitted part of the property contracted for, plaintiff's remedy was an action to reform the deed, for the general rule is that the deed merges the contract (Schoonmaker v. Hoyt, 148 N. Y. 425, 42 N. E. 1059), and "it needs no argument to prove that a single covenant to convey is performed by a conveyance" (Morris v. Whitcher, 20 N. Y. 46; Murdock v. Gilchrist, 52 N. Y. 246). If the contract had contained a covenant relating to the personal property, or if the consideration therefore had been separate and the return had shown that it was paid, or if there had been an oral agreement at the time the deed was delivered by which the agreement to

transfer the personal property should survive the deed, then plaintiff might have maintained an action for breach of contract to transfer personal property, because oral agreements are not affected by a deed, and "distinct and separable provisions" of a written contract are not merged in a deed. Witbeck v. Waine, 16 N. Y. 532; German-American Company v. Starke, 84 Hun, 430, 32 N. Y. Supp. 403; Stearns v. Lichtenstein, 48 App. Div. 501, 62 N. Y. Supp. 949; Lewis v. Seabury, 74 N. Y. 409, 30 Am. Rep. 311; Disbrow v. Harris, 122 N. Y. 365, 25 N. E. 356.

I have assumed that plaintiff reimbursed his grantee for moneys paid by her to prevent the removal of the tubs; but I find no concession or evidence to that effect in the return. It seems, however, to be conceded or assumed in the briefs.

For these reasons, I agree with Justice GIEGERICH that the judgment should be reversed, and a new trial ordered, with costs to appellants to abide the event.

FORD, J. (dissenting). The plaintiff was obliged to prove that the title to which Mrs. Weinfeld voluntarily yielded was paramount to that acquired by him from the defendant and by Mrs. Weinfeld from him. Bordwell v. Collie, 45 N. Y. 494. Plaintiff has put in evidence a contract between the Union Granite Company and Mrs. Kurzynsky, showing title to the tubs in question in said company. It was conceded that said contract was executed in duplicate and that one duplicate was delivered to the purchaser. Said contract was dated February 28, 1903, and under section 115 of the lien law, as it stood before its repeal, which went into effect on September 1, 1905, did not need to be filed as against subsequent purchasers, as the tubs covered by it are undoubtedly household goods under that section. Laws 1905, p. 1162, c. 503, which repealed said section 115 of the lien law, saves from the effect of the repeal "any action or proceeding pending at the time this act takes effect." We must assume that the Legislature intended to include in these words such a case as the present one, as it is evident that to take away from a vendor the protection of a statute on which he has relied would be unconstitutional, for it would not affect a remedy, but a right.

Even if the mode of the attachment of the tubs to the freehold had been such that they might be held to be fixtures in case the purchaser has become the unqualified owner of the freehold, they nevertheless continued to be personal property by virtue of the arrangement between the purchaser and the vendor. Kerby v. Clapp, 15 App. Div. 37, 44 N. Y. Supp. 116. This being the case, the Union Granite Company was protected against subsequent purchasers without filing the contract. The fact that it did file and refile the contract does not affect the protection the statute gave it through the execution of duplicate contracts and the delivery of one of the duplicates to Mrs. Kurzynsky.

The value of the tubs is conceded to have been $143, the amount found by the judge below. It is also conceded that Mrs. Weinfeld, the last owner, paid the claim, and that plaintiff, Mrs. Weinfeld's vendor, paid her for her claim against him arising out of this breach of war-

ranty of title. It is also conceded that defendant was plaintiff's vendor. In my opinion the plaintiff has thus made out his case to the effect that the title of the Union Granite Company to the tubs was paramount to that acquired by Mrs. Weinfeld from the plaintiff and by the plaintiff from the defendant.

I agree with the opinion of Mr. Justice GIEGERICH that the judgment and proceedings in the replevin action were incompetent against this defendant, so far as proof of title was concerned. If the Union Granite Company had not complied with section 115 of the lien law, it would have been necessary for the plaintiff to show that within a year after the refiling of the contract a replevin suit had been started, and that it had continued to a time subsequent to the purchase of the property by Mrs. Weinfeld, in order to show that the Union Granite Company was protected against subsequent purchasers, although it had not refiled the contract a second time, and to this extent the record in the replevin suit might have been competent against this defendant. But the filing of the contract could not operate as constructive notice in the case of such duplicate contracts (Baldinger v. Levine, 83 App. Div. 130, 82 N. Y. Supp. 483), and there seems to have been no necessity for the plaintiff to have offered any evidence in regard to the replevin suit. Under the Baldinger Case, supra, no protection was afforded the vendor by filing the contract or beginning the replevin suit. The protection came from executing the duplicate contracts and delivering one of them to the purchaser.

In my opinion it is not necessary to decide the very interesting question as to what presumption is to be indulged in regarding the performance of the condition of payment contained in the bill of sale. The case was evidently tried by both counsel on the theory that the tubs had not been paid for, and the following colloquy between counsel appears to me to imply a concession of that fact by defendants' counsel:

"Plaintiff's Counsel: I will make another statement. It is conceded by both sides that the plaintiff had no notice of the status of the tubs, or that the title thereto was in any other person but the defendants, or that he had notice of the bill of sale, or that he had notice of the said suit which resulted in the said judgment in the Supreme Court.
"Defendants' Counsel: That is conceded; yes."

The case of Ryan v. Wollowitz, 25 Misc. Rep. 498, 54 N. Y. Supp. 988, was a case where there was no evidence of payment by the vendee for the goods attempted to be recovered from the defendants. The words used by this court in that case seem to me to apply to this:

"There is no direct evidence that the goods were not paid for by Spitalsky [the original vendee], but it seems to have been assumed on the trial that they were not paid for by him."

I do not think we should send plaintiff back for a new trial for lack of direct proof of a fact which seems to me to have been assumed by both counsel and to have been practically conceded by the defendant. Neither in his motions to dismiss nor in his briefs before this court has defendant suggested such a claim.

The judgment should be affirmed, in my opinion.